**IN THE COURT OF APPEALS OF IOWA**

No. 14-0979
Filed November 13, 2014

**IN THE INTEREST OF K.S.-T.,**
**Minor Child,**

**R.T., Father,**
**Appellant,**

**P.S., Mother,**
**Appellant.**
_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.


A mother and father appeal the termination of their parental rights to their child, born in 2013. **AFFIRMED.**


Tammi Blackstone of Harrison & Dietz-Kilen, P.L.C., Des Moines, for appellant father.

Steven L. Cooper of Cooper, Goedicke, Reimer & Reese Law Firm, P.C., West Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd Assistant Attorney General, John P. Sarcone, County Attorney, and Christina M. Gonzalez, Assistant County Attorney, for appellee State.

Erin Mayfield of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.


Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**VAITHESWARAN, P.J.**

A mother and father appeal the termination of their parental rights to their child, born in 2013. The mother preliminarily challenges an order transferring custody of the child to the department of human services. She contends (1) the juvenile court's decision was not supported by the law or evidence, (2) the juvenile court's basis for ordering a transfer of care was "barred by res judicata," and (3) the transfer was not in the child's best interests. The mother also challenges the termination decision, arguing (1) the record lacks clear and convincing evidence to support the grounds for termination cited by the juvenile court, (2) termination was not in the child's best interests, and (3) the juvenile court should have invoked certain statutory exceptions to termination. The father challenges the grounds for termination cited by the juvenile court.

### I. Mother

The mother was incarcerated for shoplifting and transitioned to a women's residential facility, where she gave birth to the child who is the subject of this action. She has two older children who were the subject of separate proceedings. The mother's parental rights to one of those children were terminated.

The child in this action was adjudicated in need of assistance (CINA) based on the mother's transition from incarceration, her relationship and ongoing contact with the child's violent father, and her unwillingness to seek a no contact order barring interaction with him. The juvenile court initially allowed the child to remain with the mother and ordered a battery of services to assist her in maintaining custody of him. According to the department, the mother took "very

good care" of the child, had "very warm interactions" with him, and was "strongly bonded" to him.

The mother was released from the women's residential facility and moved to an apartment, which a service provider found to be clean and appropriate. According to the provider, the baby "appeared to be well cared for and alert." The juvenile court entered a dispositional order reaffirming the mother's custody of the child, subject to compliance with all prior services and department and probation expectations. Among the expectations was an instruction to "abstain[] from activities that are illegal."

For months, the mother continued her exemplary care of the child. She also earned wages, attended a class to address domestic violence issues, took the child to protective day care when she was working, and generally cooperated with the department and service providers. There was one exception: drug testing. The mother missed several tests and admitted to using marijuana on one occasion.

When the child was ten months old, the State requested modification of the dispositional order to have custody of the child transferred to the department. The court granted the request, subject to an evidentiary hearing. The child was placed in foster care.

Meanwhile, an outpatient drug treatment provider issued a report giving the mother a "guarded" prognosis "due to her lack of commitment and engagement in recovery supports." The provider's assessment was less harsh at an evidentiary hearing a month later; she testified the mother was discharged from the program because further services were unnecessary. She noted a

change in the mother during the last three weeks of services, including a willingness to provide urine samples, which tested negative for the presence of drugs.

Unfortunately, the mother did not sustain a drug-free lifestyle. She admitted to using marijuana shortly after her discharge from the outpatient program. The mother flaunted domestic violence concerns by inviting the child's father to a birthday party for the child organized by the foster parents, without seeking permission from the department or the foster parents. The juvenile court relied on these and other circumstances to conclude the child should remain out of her care. The court modified the dispositional order to reflect this change of custody.

The case proceeded to termination. Following another evidentiary hearing, the court concluded the State proved termination under Iowa Code sections 232.116(1)(d) (requiring proof the parent was offered or received services to correct the circumstances leading to the adjudication but the circumstances continued to exist) and (g) (requiring proof the parent continues to lack the ability or willingness to respond to services that would correct the situation and an additional period of rehabilitation would not correct the situation). Iowa Code § 232.116(1)(d), (g) (2013).

As noted, the mother challenges the juvenile court's decision to transfer custody of the child to the department and its ultimate decision to terminate her parental rights. Our review of both decisions is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

### A. Modification of Dispositional Order

### 1. Grounds for Transfer

A court may modify a dispositional order if "[t]he efforts made to effect the purposes of the order have been unsuccessful and other options to effect the purposes of the order are not available." Iowa Code § 232.103(4)(c). Custody of the child should not be transferred unless there is clear and convincing evidence the child cannot be protected from "some harm which would justify the adjudication of the child as a child in need of assistance." Iowa Code § 232.102(5)(a)(2). Additionally, "continuation of the child in the child's home" must "be contrary to the welfare of the child" and reasonable efforts must have been made to keep the child in the home. Iowa Code § 232.102(5)(b).

There is no question "[t]he efforts made to effect the purposes" of the dispositional order were "unsuccessful and other options to effect the purposes of the order are not available." Iowa Code § 232.103(4)(c). As noted, the mother was to abstain from illegal activities. She did not. She admitted to marijuana usage on two occasions. Additionally, missed drug tests were treated as positive. The mother knew her drug use would jeopardize her chances of maintaining and regaining custody of her child. This knowledge did not give her pause.

We turn to whether the State proved "some harm which would justify the adjudication of the child as a child in need of assistance." Iowa Code § 232.102(5)(a)(2). The mother contends she did not care for the child while under the influence and "[i]n nearly four years of Juvenile Court involvement no . . . report has ever noted any behavior indicators of drug usage by the Mother."

The mother's assertion finds some support in a recent Iowa Supreme Court opinion, *In re J.S.*, 846 N.W.2d 36, 43-44 (Iowa 2014). There, the court was faced with a mother who admitted to methamphetamine use and repeatedly tested positive for the presence of the substance in her system. *In re J.S.*, 846 N.W.2d at 39-40. The juvenile court adjudicated the child in need of assistance pursuant to Iowa Code section 232.2(6)(b), which applies to a child "[w]hose parent, guardian, other custodian, or other member of the household in which the child resides has physically abused or neglected the child, or is imminently likely to abuse or neglect the child." The Iowa Supreme Court reversed the adjudication. The court held "the State failed to prove any specific prior incidents of abuse or neglect. Its case was based on the general characteristics of methamphetamine addiction, and for section 232.2(6)(b) purposes, we do not believe that is automatically enough to establish an imminent likelihood of physical harm to the children." *In re J.S.*, 846 N.W.2d at 43-44. *J.S.* is instructive but ultimately not on all fours with this case.

First, the child in this case was adjudicated in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2), not section 232.2(6)(b). Section 232.2(6)(c)(2) applies to a child "[w]ho has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child."

Second, we are not faced with the propriety of the initial adjudication as was the case in *J.S.*, but of an order modifying a disposition. As noted, we need only find "some harm" that would justify the adjudication. Iowa Code § 232.102(5)(a)(2). At the time of the adjudicatory order, the mother's transitional

status and domestic violence concerns justified the adjudication. While a department caseworker conceded there was no imminent safety concern at the time of the hearing on the motion to modify the disposition, she asserted the mother had yet to resolve "[s]ubstance abuse, domestic violence, and mental health . . . and criminal behaviors and criminal thinking." Substance abuse is a "harm which would justify the adjudication of the child as a child in need of assistance." *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (stating father's substance abuse issue "continued to place himself and others in danger despite his otherwise laudable participation in services"). Domestic violence also is a harm that would justify adjudication of the child as a child in need of assistance. *See In re L.M.*, No. 10-1001, 2010 WL 3325407, at *3 (Iowa Ct. App. Aug. 25, 2010). The mother did not curtail contact with the father despite his history of domestic violence, as reflected by her invitation to have him attend the child's birthday party. As for the mother's mental health, her attendance at therapy sessions was sporadic until the month of the hearing on the motion to modify disposition. Finally, the mother understood but did not internalize the criminality of marijuana use. We conclude the State established the mother could not protect the child from "some harm which would justify the adjudication."

In reaching this conclusion, we have not considered certain additional assertions of harm propounded by the department. For example, the department claimed the mother failed to inform the agency about a utility shut-off at her home. The shut-off did not jeopardize the child's health or safety; the mother contacted the utility provider directly and addressed the shut-off without departmental assistance. The department also cited the mother's decision to

place milk outside to keep it cold during the shut-off. Far from a reflection of poor judgment, this act revealed creative thinking to resolve an immediate problem. Finally, we are not persuaded the mother was dishonest with the department about her drug usage or certain daycare issues. When asked, she disclosed her marijuana use. Without prompting, she also informed the department of a late pick-up of her child from a daycare center, which she said was a result of a delayed bus schedule. Finally, she explained why the child was not always in protective daycare as instructed, testifying she cared for the child herself during periods of unemployment. These factors did not support modification of the disposition.

## 2.    *"Res Judicata"*

The mother contends the juvenile court's basis for modifying the dispositional order was barred by the doctrine of res judicata. We disagree. Although a dispositional order is a final appealable order, the order is subject to modification. *See In re A.W.*, 464 N.W.2d 476, 477 (Iowa Ct. App. 1990). The mother concedes as much by arguing modifications require proof of a material and substantial change of circumstances. *See In re R.F.*, 471 N.W.2d 821, 824 (Iowa 1991). While a showing of such a change is not statutorily mandated, this judicial gloss envisions a different set of facts than the facts underlying the adjudication and dispositional orders. Accordingly, the res judicata doctrine is inapplicable.

Even if the doctrine were applicable, the facts are not identical. As discussed, the mother used illegal drugs after the dispositional order was entered.

*3.* *Best Interests*

The mother asserts a modification of the dispositional order was not in the child's best interests. There is no question the mother had the ability to be a model parent. But, after years of services, the mother engaged in acts she knew to be illegal and knew would compromise her custodial rights to the child. Notwithstanding her loving care at the outset and the deep bond she forged with the child, we conclude modification of the dispositional order was in the child's best interests.

**B. Termination Order**

The mother contends the record lacks clear and convincing evidence to support the grounds for termination cited by the juvenile court. We may affirm if we find clear and convincing evidence to support either of the grounds cited by the juvenile court. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). Our discussion above leads us to conclude the State satisfied the elements of Iowa Code section 232.116(1)(g), which requires a child-in-need-of-assistance adjudication, proof of a prior termination, and "clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation."

As for whether termination was in the child's best interests, the child's safety is the paramount concern. *P.L.*, 778 N.W.2d at 40. Given the mother's continued drug use and her unwillingness to internalize the lessons she learned during outpatient treatment, we conclude the child's safety was at risk and termination was in the child's best interests.

We turn to certain exceptions to termination. *See id.* at 37-38. The exception based on the bond between parent and child raises the closest question. Iowa Code § 232.116(3)(c). All concerned characterized the child as happy, healthy, and well-adjusted. The mother deserves much of the credit because she raised the child for the first ten months of his life. But after years of services, the mother sabotaged her own progress and risked the future safety of her child. Under these circumstances, we conclude termination of her parental rights was in the child's best interests notwithstanding the bond.

The mother also asserts termination was unwarranted because relatives expressed a willingness to care for the child. See Iowa Code § 232.116(3)(a). For the reasons set forth above, we conclude the possibility of a relative placement was not grounds for declining to terminate her parental rights.

We affirm the termination of the mother's parental rights to this child.

## II. Father

As noted at the outset, the father raises a challenge to the grounds for termination cited by the juvenile court. In passing, he also asserts he was not served with the child in need of assistance petition and "attended no hearings during that case."

We begin with the notice issue. Notice is jurisdictional and a judgment entered without notice is void. *In re S.P.*, 672 N.W.2d 842, 845-46 (Iowa 2003). "The issue boils down to whether [the father's] whereabouts were unknown and whether a 'reasonably diligent search' was made to determine his whereabouts." *Id.* at 846.

The child-in-need-of-assistance petition was filed in January 2013. The petition identified the father by name and birthdate but listed no street address. In time, a State investigator filed an affidavit of diligent search attesting he spoke to the father and made arrangements to deliver the original notice and notice of hearing to him. The father did not appear. The investigator followed up with "multiple messages on the father's phone." After receiving no return phone call, the investigator searched for additional information on national and local law enforcement databases. Those sources revealed dated addresses.

There is no question the investigator made "numerous inquiries." *Id.* at 848. But he did not make "the obvious inquiries a reasonable person would make under the circumstances," such as a request for information from the child's mother. *Id.*

The State's omission was fatal in *In re S.P.* and it might have been fatal here,[1] but for a juvenile court finding that the father appeared at a contested child in need of assistance hearing. *See In re J.F.*, 386 N.W.2d 149, 152 (Iowa Ct. App. 1986) (noting father who did not receive notice of CINA action was initially entitled to have dispositional order vacated but waived this right by voluntarily appearing and acquiescing in the court's jurisdiction). Notably, the adjudicatory order containing this finding stated the father's visitation would be at the discretion of the department and would be professionally supervised. This order

---

[1] We recognize the father agreed to accept delivery of the documents at a prearranged time and location and failed to do so. However, this did not absolve the State of its obligation to ensure proper service. *See State v. Kaufman*, 201 N.W.2d 722, 724 (Iowa 1972) (holding notice served on attorney who may have been representing defendant was insufficient).

would have been unnecessary had the father not appeared.[2]  In light of the father's appearance at the adjudicatory hearing, we conclude the State's failure to notify him formally does not require us to vacate the district court judgment against him.  We proceed to the merits.

We may affirm if we find clear and convincing evidence to support any of the termination provisions cited by the juvenile court.  *S.R.*, 600 N.W.2d at 64.  On our de novo review, we find clear and convincing evidence to support termination under Iowa Code section 232.116(1)(e) (requiring proof of several elements including proof of the absence of significant and meaningful contact).

The father knew he had a child; he appeared at the hospital following the child's birth.  Nonetheless, he declined to pursue the court-approved avenue of supervised contact with the child until paternity was formally established shortly before the filing of the termination petition.  At the termination hearing he testified, "Since [the child's] been born, I only seen him a few times.  I seen him at birthday parties.  I seen him a couple times at a couple of visits.  Probably, like, probably, like, two or three times."  His statement establishes the absence of significant and meaningful contact with the child.  Accordingly, we affirm the termination of the father's parental rights to the child under this provision.

**AFFIRMED.**

---

[2] The record is less than clear on the extent of the father's involvement at the adjudicatory hearing.  As late as six months after the hearing, a dispositional modification order stated the father had no attorney and did not participate in the proceedings precipitating that order.