In the Interest of S.R., Minor Child,
F.C., Mother, Appellant.

No. 98–1324.

Court of Appeals of Iowa.

June 23, 1999.

Kellyann M. Lekar of Roberts & Stevens, P.L.C., Waterloo, for appellant.

Thomas J. Miller, Attorney General, Chris C. Odell, Assistant Attorney General, and Melissa L. Smith, Assistant County Attorney, for appellee State.

Heidi L. Noonan–Day of Gottschalk, Shinkle & Noonan–Day, Cedar Falls, guardian ad litem for minor child.

Heard by HUITINK, P.J., and STREIT and VOGEL, JJ.

STREIT, J.

A mother whose daughter had fifteen broken bones by the age of three months caused by intentional abuse appeals termination of her parental rights. Because we find clear and convincing evidence supports termination of her parental rights under sections 232.116(1)(c) & (h) of the Iowa Code, we affirm.

### I. Background Proceedings & Facts.

Faith and Jason are the parents of Shania, born in December of 1996. In March of 1996 Shania was temporarily removed from her parents' custody after it was discovered during a medical examination she had fifteen broken bones. The examining physician concluded the injuries were non-accidental based on their severity and type. Following an investigation, Shania

was placed with her paternal grandparents. In July of 1997, Shania was adjudicated a child in need of assistance. The Department of Human Services was unable to determine the identity of the child abuse perpetrator.

The parents denied their involvement in Shania's injuries, blaming medical professionals or congenital defects and failed, as required by DHS, to develop a plan to protect Shania from future injury. The State filed a petition to terminate parental rights under Iowa Code sections 232.116(1)(c)(g) & (h) (1997) in December of 1997. The district court found clear and convincing evidence existed to terminate Faith and Jason's parental rights under those sections. Faith appeals termination of her parental rights.

## II. Standard of Review.

■ We review termination proceedings de novo. *In re S.N.*, 500 N.W.2d 32, 34 (Iowa 1993). The grounds for termination must be proven by clear and convincing evidence. *In re E.K.*, 568 N.W.2d 829, 830 (Iowa App.1997). Our primary concern is the best interest of the child. *In re A.B.*, 554 N.W.2d 291, 293 (Iowa App.1996).

## III. The Merits.

Faith contends the State did not prove the grounds for termination under sections

232.116(1)(c) or (h)[1]. Specifically, she argues there is not clear and convincing evidence Shania could not be returned to the care of her parents, that reasonable services were not offered to reunite Shania with her mother, and that it is not in Shania's best interest to be returned to her parents. She also argues the trial court erred in terminating parental rights rather than entering a permanency order placing Shania with her grandparents.

■ When the juvenile court terminates parental rights on more than one statutory ground, we need only find grounds to terminate under one of the sections cited by the juvenile court to affirm. *In re A.J.*, 553 N.W.2d 909, 911 (Iowa App.1996). In this case, however, we find clear and convincing evidence supports the district court's decision to terminate Faith's parental rights under both sections (c) and (h).

■ Shania was adjudicated a child in need of assistance after she was physically abused. Although Faith argues her fifteen broken bones were caused by either medical providers or congenital defects, clear and convincing evidence shows the abuse was non-accidental and caused by one of Shania's care providers, either a parent or other family member. One physician who examined Shania stated Faith should have known of the fractures because they would have been very painful to Shania. Thus, the first factor of both sections

---

1. Those sections state the grounds for termination as:

c. The court finds that both of the following have occurred:

(1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.

(2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

Iowa Code S 232.116(1)(c) (1997).

h. The court finds that all of the following have occurred:

(1) The child meets the definition of child in need of assistance based on a finding of physical or sexual abuse or neglect as a result of the acts or omissions of one or both parents.

(2) There is clear and convincing evidence that the abuse or neglect posed a significant risk to the life of the child or constituted imminent danger to the child.

(3) There is clear and convincing evidence that the offer or receipt of services would not correct the conditions which led to the abuse or neglect of the child within a reasonable period of time.

Iowa Code § 232.116(1)(h) (1997).

232.116(1)(c) & (h) is met. The second factor of section 232.116(1)(h)(1) is also satisfied because the extent of Shania's abuse constituted imminent danger to Shania.

The question remains if the last factor in both sections, requiring the parents be offered services to correct the circumstances which led to the abuse is met. *See* Iowa Code §§ 232.116(1)(c) & (h). We also look to whether a reasonable effort was made to reunite the child with the parent. *See In re L.M.W.*, 518 N.W.2d 804 (Iowa App.1994). While the State has the obligation to provide reasonable reunification services, the Mother had the obligation to demand other, different or additional services prior to the termination hearing. *Id.* at 807. Faith did not demand services other than those provided, and for that reason, the issue of whether services were adequate has not been preserved for appellate review. *In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa App.1994).

We find the services provided Faith were reasonable. Family reunification was a goal of DHS from the beginning of this case. To help achieve this goal, Shania was placed with her paternal grandparents, less than ten miles from Faith and Jason so that supervised visitation would be easy to facilitate. Faith and Jason were provided with family and social skill development training which covered the topics of parenting, communication of feelings, stress reduction, age-appropriate expectations for an infant, and anger management. A social worker from DHS provided direct Family Centered Services supervision. Faith did not make progress within the services provided.

Particularly troubling is Faith's absolute refusal to acknowledge that either she, Shania's father, or another family member abused Shania.[2] The requirement that a parent acknowledge and recognize abuse is essential for any meaningful change to occur. *See In re L .B.*, 530 N.W.2d 465, 468 (Iowa App.1995). Without this acknowledgment, the services provided were not likely to be effective. In fact, by December of 1997 one DHS worker noted the situation had not changed in a way that could guarantee Shania's safety if returned to her parents. This observation was largely based on Faith's inability to articulate any plan to keep Shania safe if she regained custody of her. We find clear and convincing evidence Shania could not safely be returned to Faith's care.

After de novo review of the record, we find it in Shania's best interests for Faith's parental rights to be terminated rather than a permanency order placing Shania under the custody of her paternal grandparents or returning Shania to Faith's care. Faith will not acknowledge the imminent danger of abuse to Shania under her care. For this reason, she is unable to, and has not, taken any steps to remedy the circumstances which caused the abuse. Because we find clear and convincing evidence supports termination of Faith's parental rights under sections 232.116(1)(c) & (h), we affirm the trial court.

**AFFIRMED.**

---

**2.** Late in the proceedings, Faith did grudgingly acknowledge these facts.