## IN THE COURT OF APPEALS OF IOWA

No. 4-031 / 13-1828
Filed February 5, 2014

**IN THE INTEREST OF Z.G. AND S.G.,**
**Minor Children,**

**D.G., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A mother appeals the termination of her parental rights to two children. **AFFIRMED.**

Thomas Graves of Graves Law Firm, P.C., Clive, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Jennifer G. Galloway, Assistant County Attorney, for appellee State.

Michelle Saveraid of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Potterfield, P.J., and Doyle and Bower, JJ.

**POTTERFIELD, P.J.**

A mother appeals the termination of her parental rights to two children. She argues additional time should have been allowed prior to termination, the grounds for termination were not established, her rights need not be terminated as the children are placed with a relative, and termination is not in the best interests of the children. We affirm.

## I. Facts and proceedings.

Z.G. and S.G. came to the attention of the department of human services (DHS) after their older brother was injured by the mother's cohabiting paramour. The paramour had a previous conviction (among others) of lascivious acts with a child. A child protective assessment was founded against the paramour for physical abuse of the older brother. The mother continued to allow the paramour to take care of all three children, believing the child's injury was self-inflicted despite all evidence to the contrary. The next month, the child sustained a broken wrist. The child consistently reported the injury was again inflicted by the paramour. The mother told DHS the child injured himself because he was jealous of the time she spent with the paramour.

All three children were removed from the home on February 24, 2012, and placed with their maternal grandparents (the grandparents). On March second and twelfth a removal hearing was held. Prior to the hearing, the mother contested removal. However, at the hearing she rescinded her resistance. The court found the mother allowed her paramour, a registered sex offender, to be the sole caretaker of the children. When the paramour injured her child multiple times, she chose to believe the paramour over the child. The court ordered

continued placement with the grandparents. It also ordered the mother to undergo a psychosocial evaluation and to participate in therapy. A no-contact order was entered between the paramour and all three children on March 14.

On May 22, 2012, all three children were adjudicated children in need of assistance (CINA). During this time, the mother reported seeing her children two to three times a week at the grandparents' house for about four hours at a time At a meeting with a DHS worker, the mother stated that no romantic relationship was worth losing her children and that she and the paramour were no longer seeing each other. However, photos and reports from investigators showed the relationship continued. The court noted that while the paramour was responsible for the abuse, it had serious concerns about the mother's ability to keep the children safe while continuing her relationship with the paramour. The court continued placement of the children with the maternal grandparents.

During June 2012, the mother continued to visit the children two to three times a week at the granparents' home. Z.G. and S.G. began supervised visits with their biological father (the father).

A contested CINA review hearing was held September 17, 2012; at this time the court also heard a motion to modify placement of Z.G. and S.G. DHS, the guardian ad litem (GAL), and the father all requested Z.G. and S.G be placed with the father. The mother resisted this recommendation. The court found the mother was dishonest regarding her continued contact with the paramour, failed to inform her therapist the reason for the children's removal, and continued to defend the paramour and blame her oldest child for his injuries. The court also found placement with the father presented no safety concerns. The mother did

not request additional services at this time.  The court placed Z.G. and S.G. with the father, and continued placement of the oldest child with the grandparents. Weekend visitation with the mother was arranged at the grandparents' house. No concerns were identified by DHS workers regarding the mother's home or her behavior with the children.  The mother continued to attend therapy, as did the children.  The mother's communication with the father improved.

In November, the paramour was again observed at the mother's house. When confronted with this information by a DHS caseworker on January 10, 2013, the mother first denied the contact, alleging the paramour broke into her home and that she was out of town.  When pressed further, the mother became defensive and again denied that the paramour injured her oldest son, saying the paramour only admitted to injuring the child because he was "cornered and alone."

A permanency hearing was held January 29, 2013.  The court found the mother's relationship with the paramour created an ongoing risk to the children, and directed a termination petition be filed regarding the mother's rights as to all three children.  All other orders were continued without modification.

A petition to terminate the mother's parental rights was filed March 6, 2013.  Termination hearings were held May 23, May 28, May 29, and June 14, 2013.  The mother, the grandparents, DHS case workers, the eldest child's primary care physician, and the paramour's ex-wife testified.

In its order filed in November 2013,  the court found the most persuasive testimony in favor of termination of the mother's parental rights to Z.G. and S.G. came from the mother herself.  It noted she "was repeatedly caught lying during

her testimony causing this court to give her statements little credibility." This is also apparent in our de novo review of her testimony. The mother acknowledged that she knew her ongoing relationship with the paramour would impede her reconciliation with her children.

The paramour's ex-wife testified to conducting custody exchanges of her and the paramour's children at the mother's home. The ex-wife testified she believed the paramour was living at the home. She testified the children were told to "duck down" because DHS was watching the mother's house.

The court terminated the mother's rights to Z.G. and S.G. under Iowa Code sections 232.116(1)(d) and (h) (2013). In its order, the court highlighted the mother's repeated dishonesty, the young children's need for permanency, and the mother's inability to provide a safe environment for the children by choosing to stay with the abusive paramour. The mother appeals.

## II. Analysis.

We review termination-of-parental-rights proceedings de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).

### A. Additional time.

The mother first argues the court should have granted her a six-month extension before termination following her permanency review hearing. *See* Iowa Code § 232.102(2)(b). The State argues this issue is not preserved for our review. "[T]he general rule that appellate arguments must first be raised in the trial court applies to CINA and termination of parental rights cases." *A.B.*, 815 N.W.2d at 773. We conclude that even if error was preserved on this issue, the mother should not have received an additional six months towards reunification.

Throughout the proceedings she knew continuing the relationship with her paramour was preventing reunification with her children. Yet, at trial, she admitted to continuing contact with her paramour. There is no indication an additional six months would result in any change.

*B. Grounds for termination.*

The mother's rights were terminated under Iowa Code section 232.116(1)(d) and (h). We need only find termination was warranted under one of these sections to affirm. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). Iowa Code section 232.116(1)(d) reads that a court may terminate a parent's rights if both of the following has occurred:

> (1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.
> (2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

The mother argues the circumstances leading to the children's adjudication no longer exist, because she is willing to enter into a custodial arrangement with the children's birth father. The alleged change in the mother's attitude toward the award of physical care to the father does not change the fact that the mother continues to pose a safety risk to the children as she continues to have contact with—and may reside with—a sex offender who injured her oldest child.

*C. Relative placement.*

The mother next argues that termination is unnecessary because the children live with their father. *See* Iowa Code § 232.116(3)(a) (providing a court need not terminate a parent's rights if "[a] relative has legal custody of the child."). In its ruling, the district court specifically addressed why the mother's rights needed to be terminated, despite the children's placement with their father. It held, "if Mother's rights are not severed, she will make future attempts to disrupt the stability they have found with their father," based upon "Mother's history of denying [the father's] right to have contact with his children, her continued belief she has done nothing wrong to have these children removed from her care, and her financial resources which would allow her to initiate future litigation." We agree. This section is permissive, and we do not find the children's placement with their father should prevent the termination of the mother's parental rights in this case. *See id.*

*D. Best interests of the children.*

The mother next argues that termination is not in the best interests of the children, as the children have a strong bond with her. *See id.* § 232.116(3)(c). These two children were removed from their mother's home in January 2012, a few months after turning two years old. They turned four just before the court's order terminating the mother's rights in this case. For more than half their lives, they have not lived with their mother. These children are young and require permanency. We find termination is in the children's best interests.

**AFFIRMED.**