**IN THE COURT OF APPEALS OF IOWA**

No. 14-0068
Filed April 16, 2014

**IN THE INTEREST OF C.S.,**
**Minor Child,**

**L.S., Father,**
**Appellant,**

**C.F., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Louise M. Jacobs, District Associate Judge.

The mother and father separately appeal the termination of their parental rights to their child, C.S. **AFFIRMED ON BOTH APPEALS.**

Francis P. Hurley of Phil Watson, P.C., Des Moines, for appellant father.

Randall L. Jackson, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorney General, John P. Sarcone, County Attorney, and Annette Taylor, Assistant County Attorney, for appellee State.

Kimberly Ayotte of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**VOGEL, P.J.**

The mother and father separately appeal the termination of their parental rights to their child, C.S. The mother claims the State failed to prove by clear and convincing evidence grounds to terminate her parental rights under Iowa Code section 232.116(1)(d), (h), and (i) (2013) and alternatively requests she be granted more time to prepare for C.S.'s return. The father asserts the State failed to prove grounds to terminate under Iowa Code section 232.116(1)(b), (d), (h), and (i) and that termination is not in the child's best interest. We conclude the State proved by clear and convincing evidence grounds to terminate both the mother's and father's parental rights under Iowa Code section 232.116(1)(h). We also find termination is in the child's best interest, and therefore affirm.

C.S., born in August 2012, first came to the attention of the Department of Human Services (DHS) in November of 2012. DHS initiated the investigation because the mother and father were involved in prostitution—the mother was charged with prostitution[1] under Iowa Code section 725.1 (2011) and the father with pimping under section 725.2. C.S. was present during some of these sexual encounters. DHS also discovered issues of domestic violence between the parents, substance abuse, and unaddressed mental health issues. Consequently, C.S. was removed from the parents' care on November 21, 2012, and placed with her paternal grandparents. C.S. was adjudicated a child in need of assistance (CINA) on January 23, 2013. C.S. has never been returned to either parent's care.

---

[1] At one time the mother stated she engaged in prostitution at least fifty times in the month prior to her arrest.

The mother was on probation for domestic assault at the time of the prostitution charge. A warrant was issued for her arrest for failure to comply with probation requirements. The mother then removed herself from the county and did not turn herself in until April 7, 2013, after which she was in jail until June 13. Between November 2012 and February 2013, the mother visited C.S. no more than three times. From February 10 until June 26, 2013, the mother did not visit C.S., though she began to attend visits more regularly beginning in July. However, she would often arrive late and leave early, use the time to text, frequently reschedule, and was otherwise poorly engaged with her daughter during the visits. The mother has never progressed to unsupervised visits. In her testimony, she also acknowledged the lack of a bond between her and C.S., stating:

> [C.S.] wasn't able to get that connection she needed with her mom and being able to get to know me and me being able to get to know her. I didn't get to see a lot of her growing up and starting to crawl and starting to walk and that affects her.

Additionally, the mother has several mental health issues. She reported she was diagnosed with bipolar disorder when she was younger and has been in therapy off and on since she was seven years old. During mental health exams offered as part of DHS services, various providers diagnosed the mother with major depressive disorder, anxiety disorder, impulse control disorder NOS, and borderline personality traits. She also has a history of seizures for which she receives Social Security Disability payments. Though she has been prescribed medication, she testified at the termination hearing she was not taking her medication and that most of her issues were resolved.

The mother has married and is living with her husband, though she is not currently employed. She worked for a brief time after her release from jail but quit because her work hours were flexible and, in her opinion, it was easier to have set work hours. She also briefly attended community college but stopped due to her depression and "DHS stuff" interfering. While the mother was compliant with some services offered, such as therapy, she was not consistently compliant in attending parenting classes, batterer's education, or visitation.[2]

The father has been incarcerated since July 19, 2013, and his release is not projected until October 26, 2015. At the time of his arrest for the prostitution charge he was on probation, and after that arrest, was then convicted of theft. While he denied at the hearing the domestic violence issues between him and the mother, he admitted that, during a heated assault on the mother, he punched a hole in the wall. At the time of the CINA adjudication hearing there was also a concern he was abusing illegal substances, but he was uncooperative in providing a drug screen until three weeks after being ordered to do so. The father has only visited C.S. once since her removal.

The State petitioned to terminate the mother's and father's parental rights on August 23, 2013. A hearing was held on November 1, 2013, and on January 3, 2014, the juvenile court terminated the parental rights of both parents. The mother and father separately appeal.

---

[2] At the hearing, the mother testified she was not compliant with these services because DHS would not respond to her. She also stated she was unable to stay at visits because she was trying to get a job, an apartment, and otherwise better organize her life, and that the grandparents made the visits "uncomfortable" and would "glare" at her.

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.* When the juvenile court terminates parental rights on more than one statutory ground, we only need find grounds to terminate under one of the sections cited by the juvenile court to affirm. *Id.*

To terminate parental rights under Iowa Code section 232.116(1)(h), the child must be three years of age or younger, adjudicated CINA, removed from the parents' physical custody for at least six of the last twelve months, and the child cannot be returned to the parents' care. Due to the father's incarceration, and the fact he will not be released until late in 2015, the State proved C.S. cannot be returned to his care.

With regard to the mother, her unresolved mental health issues, extensive criminal activity, and lack of insight into how her behavior affects C.S., combined with the lack of any sort of consistent and meaningful contact with C.S., show C.S. cannot be returned to her care. In the year between the removal and the termination hearing, the mother never progressed to unsupervised visits, nor did she demonstrate a desire to be a parent to C.S. such that her daughter was her priority. As the DHS report noted: "[The mother] does not interact much with [C.S.] and is on her phone three times and then texting often." Additionally, the DHS worker expressed concern "about the lack of attachment that [C.S.] has toward [the mother] and her parenting skills to help rebuild this attachment."

While we commend the mother for any progress she has made, she testified she did not take this case seriously until the petition for termination was

filed. That is simply too little, too inconsistent, and too late. In determining the future actions of the parent, her past conduct is instructive. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Overall, the mother's actions since November 2012 indicate C.S. cannot be returned to the mother's care. Therefore, the State proved by clear and convincing evidence grounds to terminate the mother's parental rights under paragraph (h).

It is also in the best interest of C.S. for parental rights to be terminated. Neither parent has shown any consistency in participating in services or otherwise attempting to parent C.S. While the mother requests more time, "[w]e have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." *In re N.F.*, 579, N.W.2d 338, 341 (Iowa Ct. App. 1998); *see also* Iowa Code § 232.116(2). Given the lack of a bond between C.S. and either parent, the ongoing criminal issues, and C.S.'s need for stability and permanency, it is in her best interest to terminate the mother's and father's parental rights.

**AFFIRMED ON BOTH APPEALS.**