# IN THE COURT OF APPEALS OF IOWA

No. 14-1020
Filed November 26, 2014

**IN THE INTEREST OF J.G.,**
**Minor Child,**

**K.G., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Romonda Belcher, District Associate Judge.

The mother appeals the juvenile court's termination of her parental rights to her son, J.G. **AFFIRMED.**

Lynn Poschner of Borseth Law Offices, Altoona, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Annie Reynolds, Assistant County Attorney, for appellee State.

Kimberly Ayotte of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VOGEL, P.J.**

The mother appeals the juvenile court's termination of her parental rights to her son, J.G. She asserts the court should have ordered an additional six months to work towards reunification in the permanency order, and that the State did not prove by clear and convincing evidence her rights should be terminated pursuant to Iowa Code section 232.116(1)(d), (g), and (h) (2013). The mother further argues termination was not in J.G.'s best interest, given the parent-child bond. We conclude the State proved by clear and convincing evidence the mother's rights should be terminated pursuant to paragraph (g), and termination is in J.G.'s best interest due to the developmental delays from which he suffers because of the mother's neglect. Consequently, we affirm the order of the juvenile court terminating the mother's parental rights.

J.G., born in August 2012, was removed from the mother's care on August 6, 2013, and placed in foster care. The basis for J.G.'s removal was the fact the mother had left him with an individual who suffers from schizophrenia, and, because he was beginning to suffer from auditory and visual hallucinations and was worried he might harm J.G., he left J.G. alone in the apartment. The individual informed the staff at Broadlawns Medical Center that J.G. was alone and the mother had been gone since 10:00 p.m. the previous night. The police, at approximately 10:00 a.m., performed a welfare check and found J.G. alone in the apartment, crying. The mother was convicted of child endangerment based on this conduct, for which she was on probation at the time of the termination hearing. After his removal, J.G. was placed in foster care and has not been

returned to the mother's care. He was adjudicated a child in need of assistance on September 13, 2013.

Once examined by medical professionals, it was discovered J.G. had many health issues and developmental delays. An October 2013 department of human services (DHS) report noted that J.G.:

> [H]as several medical needs . . . . [A DHS worker] reported that she believes that many of the issues related to [J.G.] are related to neglect and not due to a medical condition. She reported that the torticollis, the muscle weakness, and the developmental delays are related to neglect. She reported that based on the progress that [J.G.] has made since being in the foster home and having stimulus makes her more concerned about the neglect by the previous caregiver.

The mother had eight children prior to J.G.'s birth—the first having been born in 2002—and gave birth to a tenth child in February 2014. Her rights were terminated to six of the children, and the other two live with a former paramour who cares for them. The mother has a long history of mental illness that in part has contributed to the termination of parental rights to these children. This includes a history of being in abusive relationships, a diagnosis of depression, and the conclusion she operates at the equivalent of an eight or ten-year-old emotional level. A psychological assessment from a prior termination hearing noted the mother was diagnosed with histrionic personality disorder with strong paranoid and obsessive-compulsive traits, as well as passive aggressive and narcissistic features. In spite of many years of services, the mother has not consistently addressed these problems with a therapist or psychiatrist.

The mother has participated in a specialized program, "PATH," designed to help her with coping, problem solving, housing, and encouragement with

therapy and psychiatric assistance. The PATH worker has known the mother for ten years and has been involved with her individually for the past four years. The mother was able to secure suitable housing in a duplex, but was then relocated to an apartment due to complaints from the neighbors and landlords about her fighting in the street and otherwise causing disruptions. The mother is unemployed and does not have plans to obtain employment.

The following services were offered to the mother during the pendency of the proceeding: family safety, risk, and permanency services; supervised visitation; Early Access; family team meetings; parenting classes; attachment assessment; therapy; Broadlawns' PATH program; medication management; and parenting classes. However, the mother's cooperation with the professionals involved in her case as well as her utilization of the various services offered to her was inconsistent. While she began to attend visits with J.G. regularly after March 1, 2014, the service worker reported that she needed help interacting and caring for J.G. appropriately, could not internalize the worker's recommendations, and otherwise did not understand how to care for J.G. and his special needs. She further did not understand how her actions had contributed to J.G.'s serious developmental delays.

Due to the mother's inability to resolve her problems and the severe neglect visited on J.G., the State petitioned for termination of the mother's parental rights. A contested hearing was held on April 18 and 23, 2014. In an order dated June 10, 2014, the juvenile court terminated the mother's rights under to Iowa Code section 232.116(1)(d), (g), and (h). The mother appeals.

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.* When the juvenile court terminates parental rights on more than one statutory ground, we only need find grounds to terminate under one of the sections cited by the juvenile court to affirm. *Id.* To terminate a parent's rights pursuant to Iowa Code section 232.116(1)(g), the State must prove by clear and convincing evidence the child has been adjudicated in need of assistance, the mother's parental rights have been terminated to another child, she lacks the ability or willingness to respond to services, and an additional period of time would not correct the situation.

As an initial matter, the mother's argument the April 23, 2014 permanency order should have granted her an additional six months to work towards reunification was not timely appealed. *See* Iowa R. App. P. 6.101(a)(1) (stating, in a termination or CINA case, an appeal must be filed within fifteen days of the entry of the original order). Consequently, we decline to address the merits of this claim.[1]

Upon review of the record, the State proved by clear and convincing evidence the mother's rights should be terminated under paragraph (g). The mother does not contest the fact her rights have been terminated to six other children. Furthermore, it is clear she cannot or will not take advantage of the services offered to ameliorate her mental health issues and lack of ability to care

---

[1] However, even if this order would have been timely appealed, we would find the mother was given ample time to demonstrate safe and suitable parenting ability.

for a child, and that further time will not correct the situation. She has been involved with DHS since 2002 and has yet to be able to care for any one of her nine other children,[2] or even progress beyond semi-supervised visits with J.G. Nor was she able to consistently participate in or otherwise utilize the services provided to her during the pendency of this proceeding. In determining the future actions of the parent, her past conduct is instructive. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Given the mother's inability to care for J.G., termination under paragraph (g) is appropriate.

We further agree with the juvenile court termination is in J.G.'s best interest. As the testimony of the DHS workers illustrates, since being in foster care, J.G. has made substantial progress recovering from his health problems and developmental delays that occurred as a result of the mother's neglect, though he still needs specialized care. Returning him to his mother's care is not in his best interests and would only serve to exacerbate these problems, regardless of any parent-child bond.[3] *See* Iowa Code § 232.116(2), (3). Consequently, termination of the mother's parental rights is in J.G.'s best interest, and we affirm the order of the juvenile court.

**AFFIRMED.**

---

[2] According to the mother's brief, her youngest child remains in foster care.
[3] We do note the juvenile court stated:

> There is little evidence of a bond between the child and his mother. It is apparent the mother loves the child; however, the mother failed to complete an attachment assessment as ordered. Further, the bond has been weakened over the course of the proceedings due to the mother's inconsistency with interactions.