# IN THE COURT OF APPEALS OF IOWA

No. 14-1643
Filed January 14, 2015

**IN THE INTEREST OF T.G.,**
        **Minor Child,**

**A.G., Mother,**
        Appellant.

_____

        Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.


        A mother appeals the termination of parental rights to her four-year-old son. **AFFIRMED.**


        Luke D. Guthrie of Roberts, Stevens, Prendergast & Guthrie, P.L.L.C., Waterloo, for appellant.

        Thomas J. Miller, Attorney General, Kathryn K. Lang, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Steven J. Halbach and Kathleen Hahn, Assistant County Attorneys, for appellee.

        Sara Kersenbrock, Waterloo, for father.

        Michael J. Lanigan of the Law Office of Michael Lanigan, Waterloo, attorney and guardian ad litem for minor child.


        Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**TABOR, J.**

The juvenile court terminated a mother's parental relationship with her one-year-old twins in April 2014, and then terminated her relationship with her four-year-old son, T.G., in September 2014. The mother appeals from the second termination, alleging she made "viable attempts" at meeting the expectations of the Department of Human Services (DHS) case plan. The mother contends she could correct the situation with additional time and termination is not in her son's best interest. Because we find delaying permanency would harm T.G., we affirm the juvenile court's order.

T.G. was born in 2010. His family came to DHS attention in May 2013, after concerns the mother was not giving proper medical care to his half-sibling. T.G. was adjudicated as a child in need of assistance (CINA) on August 26, 2013. In November 2013, the mother underwent a comprehensive mental health assessment, and received diagnoses of panic disorder with agoraphobia; bipolar, not otherwise specified; and post-traumatic stress disorder. The mother did not follow up with treatment for these conditions. The DHS offered services to the family and T.G. remained in the home until December 2013. On December 2, 2013, a founded child protective assessment concluded the mother failed to provide critical care and abused T.G. Authorities found a burn on T.G.'s chest, which he reported was caused by his mother. The court approved removal of T.G. on December 5, 2013.

In December 2013, the mother participated in six of seven visits offered with T.G. But, according to testimony from the DHS case worker, the mother

"went into hiding from January 24th through February 23rd" of 2014 because a warrant had issued for her arrest. In early March 2014, T.G.'s play therapist recommended visits not be restarted with T.G. until the mother stabilized her mental health situation. The mother has not participated in visits with T.G. since January 2014.

In addition to her mental health issues, the mother faced substance abuse challenges. In March 2014, the mother completed a substance abuse evaluation diagnosing her with amphetamine dependence and cannabis dependence. Although admitting long-time drug use, the mother denied she had a problem. She failed to participate in drug treatment and has only completed one drug test since January 2014.

The DHS also has expressed concerns about the mother's inability to maintain appropriate housing and lack of interest in improving her parenting ability. The mother stayed with different friends throughout the course of the CINA case and refused to allow DHS workers to visit her residences. Moreover, the mother has not participated in critical services.

On April 14, 2014, the court terminated the mother's parental rights to her two younger children, J.G. and T.M.G. The order cited the mother's lack of participation in services, history of substance abuse, and "chaotic lifestyle choices."

On August 8, 2014, the State filed a petition to terminate the mother's parental rights to her older child, T.G. The juvenile court held a termination hearing on September 15, 2014. The mother was incarcerated at the time of the

termination hearing. T.G.'s father consented to the termination of his parental rights. In an order issued September 19, 2014, the court terminated the mother's parental rights under Iowa Code sections 232.116(1)(e), (g), and (*l*) (2013).[1] The mother now appeals.

We review termination proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The State must prove the grounds for termination by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Our primary concern is the child's best interest. *Id.* When the juvenile court terminates parental rights on more than one statutory ground, we may affirm on any ground cited in the order. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).

Although the mother's petition on appeal contends the juvenile court erred in finding clear and convincing evidence to terminate under the grounds cited in the petition, the mother is not specific about what statutory elements were left unmet. She offers the general assertion that she has made "viable attempts" at satisfying the DHS case plan, has had one mental health evaluation, and has sought suitable housing and employment. She alleges: "with additional time and a stable residence the child would be able to be returned home within a reasonable amount of time." She contends deferring permanency would not

---

[1] The State's petition alleged the mother had a "severe, chronic substance abuse problem." That language was from the pre–2012 version of section 232.116(1)(*l*)(2). In 2011, the legislature amended this provision, replacing the phrase "severe, chronic substance abuse problem" with "severe substance-related disorder." *See* 2011 Iowa Acts ch. 121 § 58 (effective July 1, 2012). Like the State, the district court also cited the old language.

have harmed T.G. We find the juvenile court record contradicts the mother's contentions.

The record reveals ample support for terminating the mother's parental rights under Iowa Code section 232.116(1)(g). The State proved by clear and convincing evidence T.G. had been adjudicated CINA, the mother's parental rights had been terminated as to her other children, she lacked the willingness to respond to services, and additional time would not correct the situation.

We reject the mother's assertion she could remedy the situation given more time. The DHS worker testified despite court orders the mother chose not to participate in services. The mother had opportunities to follow through on her mental health evaluation, yet opted not to seek treatment. The mother denied needing help to improve her parenting abilities, even in light of the founded child abuse assessment. The mother's recalcitrance in accepting services signals the need for termination of her parental rights. On this record, postponing permanency for T.G. would not make sense. "An abundance of patience waiting for parents to respond to services can quickly translate into intolerable hardship for the child." *In re M.B.*, 553 N.W.2d 343, 346 (Iowa Ct. App. 1996).

We further agree with the juvenile court's conclusion that termination serves T.G.'s best interests. *See* Iowa Code §§ 232.116(2), (3). The DHS worker's testimony illustrates, since being removed from his mother's care, T.G. has made substantial progress in his behavior mostly due to the foster family's efforts at providing stability and attention. The worker described T.G.'s behavior as being "like night and day" from his original home situation to foster care. The

worker testified T.G. has stopped hitting and name calling and is now "very pleasant," polite, and happy. Given this positive change, returning the child to his mother's care is not in his best interests. Accordingly, we affirm the order of the juvenile court terminating the parental relationship.

**AFFIRMED.**