## IN THE COURT OF APPEALS OF IOWA

No. 16-1012
Filed September 28, 2016

**IN THE INTEREST OF E.K.,**
**Minor child,**

**E.K., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.

A mother appeals the termination of her parental rights to a child, born in 2015. **AFFIRMED.**

Danielle M. DeBower of Eggert, Erb, Mulcahy, & Kuehner, P.L.L.C., Charles City, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Cynthia S. Schuknecht of Noah, Smith, & Schuknecht, P.L.C., Charles City, guardian ad litem for minor child.

Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VAITHESWARAN, Judge.**

A mother appeals the termination of her parental rights to a child, born in 2015. She contends the State failed to prove the grounds for termination cited by the district court. The district court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(d), (h) and (i) (2015). We may affirm if we find clear and convincing evidence to support any of the grounds cited by the district court. *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). On our de novo review, we are persuaded the child could not be returned to the mother's custody pursuant to Iowa Code section 232.116(1)(h).

The department of human services began investigating the family based on concerns that the parents used drugs while caring for the child. A day after the investigative file was opened, the child was hospitalized with multiple fractures. The injuries were inconsistent with parental explanations. The child was removed from the home and was adjudicated in need of assistance.

The department's investigation turned to the father after he advised the agency the mother was smoking marijuana in another room when the injuries occurred. The State charged the father with two counts of child endangerment based on fractures to the child's ribs and arms. The father was jailed and only minimally participated in reunification services. He consented to the termination of his parental rights.

The mother participated in substance abuse and mental health treatment, and engaged in one-and-a-half to two hour supervised visits with the child three times a week. According to the department, she interacted positively with the child and provided for his needs during the supervised visits. The mother also

qualified for disability benefits and federally-subsidized housing. Finally, she obtained a no-contact order against the father and testified she intended to divorce him.

Just two months after the child was removed, the mother began a romantic relationship with a transient man who had recently moved from another state. Within two weeks, she allowed him to move in with her. He previously had been involved in a child abuse investigation in another state, although the result of the investigation was unknown. He also had a history of domestic violence. The mother's precipitous decision to cohabit with a person with a history of violence raised doubts about her ability to keep the child safe if returned to her care.

As the department social worker assigned to the case testified, "[The mother] has some self-esteem issues and . . . she seeks out anybody that's willing to give her attention and . . . with any man that would give her attention, she would jump into that and not put her baby first." The social worker opined the child could not be returned to the mother's custody based on "[h]er dishonesty, her relationship with [the new boyfriend], [and] the fact that she . . . put . . . on Facebook . . . her intention[] of having [the child] return[ed] to her and pursuing a relationship" with the boyfriend. The social worker also cited the mother's unstable history with two older children, who lived with the maternal grandmother.

The grandmother conceded she had concerns about the mother's relationships with men. She testified that the mother had a questionable

relationship with the father of one of the children over whom the grandmother had a guardianship and the mother had not severed ties with the new boyfriend.

These concerns give us pause. While the mother may not have been responsible for breaking nine bones in the infant child's body, she was responsible for protecting the child from people in the home who might perpetrate that type of abuse. The mother appeared not to have internalized this message. Accordingly, we affirm the termination of the mother's parental rights to this child pursuant to Iowa Code section 232.116(1)(h).

**AFFIRMED.**