**IN THE COURT OF APPEALS OF IOWA**

No. 17-0148
Filed April 5, 2017

**IN THE INTEREST OF C.L., H.L., M.S., and M.S.,**
**Minor children,**

**E.L., Mother,**
        Appellant,

**R.S., Father,**
        Appellant.
_____


        Appeal from the Iowa District Court for Cerro Gordo County, Gregg R.

Rosenbladt, Judge.


        A mother and father separately appeal the termination of their parental

rights.  **AFFIRMED ON BOTH APPEALS.**


        Dylan J. Thomas, Mason City, for appellant mother.

        Michael J. Moeller of Sorensen & Moeller Law Office, Clear Lake, for

appellant father.

        Thomas J. Miller, Attorney General, and David M. Van Compernolle,

Assistant Attorney General, for appellee State.

        David A. Grooters of Pappajohn, Shriver, Eide & Nielsen, P.C., Mason

City, guardian ad litem for minor children.


        Considered by Danilson, C.J., and Vogel and Vaitheswaran, JJ.

**VOGEL, Judge.**

A mother and father separately appeal the termination of their parental rights to their children. Finding the State proved the grounds for termination by clear and convincing evidence and that termination was in the children's best interest, we affirm.

## I.    Background Facts and Proceedings

C.L., born September 2000; H.L., born January 2004; M.E.S., born November 2001; and M.J.S.[1], born October 2005, came to the attention of the Iowa Department of Human Services (DHS) in 2007, upon allegations of physical abuse and domestic violence. Over the course of the next few years, many services were offered, specifically targeting the mental health and substance abuse of the parents along with efforts to keep the children safe. The children were removed from the home at different times, but in September 2014, H.L., M.E.S., and M.J.S. were returned to the mother's care, and their child-in-need-of-assistance cases were closed in January 2015 due to progress demonstrated by the mother. C.L. was returned to the mother's care in May 2015.

However, it was not long before the mother became resistant to services, including refusing to let the child protective worker enter parts of her home and garage. In August 2015, the DHS became aware the mother's paramour and another man were living in the mother's home and there were allegations the mother was smoking marijuana with her paramour. The mother denied use but refused to participate in a drug screen requested by the DHS. Meanwhile, there

---

[1] The father in this appeal is the biological parent of M.E.S. and M.J.S. The parental rights of the fathers of C.L. and H.L. were also terminated; they do not appeal.

were reports the children were being exposed to pornography and were engaging in sexual activity with one another.

On August 31, 2015, the children were removed from the home and placed in foster care. The mother was ordered to cooperate with the DHS. In September 2015, the mother tested positive for methamphetamine; she admitted to using but stated that her paramour was no longer living with her, and she refused to re-engage in mental-health counseling. In October 2015, the child protective worker observed signs of drug use in the mother and noted her paramour was still living in the home. In January 2016, the mother began participating in family preservation court. Through March 2016, she provided several drug screens that were positive for methamphetamine and/or marijuana. She began inpatient substance-abuse treatment and was discharged unsuccessfully multiple times before ultimately completing inpatient treatment in May 2016. She transitioned to outpatient services and resumed her relationship with her paramour.

The mother continued to provide positive drug screens through July 2016, while denying use. Also in July 2016, her paramour was arrested for domestic abuse assault. The mother reported her paramour had attempted to strangle her and threw a pocket knife at her. In addition, throughout the pendency of the case, the mother's employment has been sporadic and her housing situation unreliable.

The father's participation in services has been inconsistent, and he has been resistant to substance-abuse and mental-health treatment. The father has had intermittent periods of supervised visitations with M.J.S. but has not

consistently participated in services since the DHS became involved in 2007 based on abuse allegations against him.

On July 7, 2016, after several years of offered services, the State filed a petition to terminate the mother's parental rights to all the children and the father's parental rights to his two children—M.E.S. and M.J.S. The matter first came on for hearing on October 28 and concluded on October 31. On December 16, the district court ordered both the mother's and the father's parental rights terminated under Iowa Code sections 232.116(1)(e) and (f) (2016). Following the mother's and father's motions under Iowa Rule of Civil Procedure 1.904(2), the court enlarged its original termination order and found the DHS had made reasonable efforts to reunify the parents with their respective children. Both the mother and father appeal.

## II. Standard of Review

In reviewing termination-of-parental-rights proceedings, we apply a de novo review, giving weight to the factual findings of the district court, while not being bound by them. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

## III. Statutory Grounds for Termination

Iowa Code section 232.116(1)(f) permits termination if:

The court finds that all of the following have occurred:
(1) The child is four years of age or older.
(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Both the father and the mother argue the State failed to prove the statutory grounds for termination by clear and convincing evidence and the DHS failed to make reasonable efforts towards reunification.[2] The father also asserts the district court should have granted him an additional six months to work towards reunification. The mother also argues termination was not in the best interests of the children and that a bond exists between her and the children that should militate against termination. The State urges us to affirm the termination.

"When the juvenile court terminates parental rights on more than one statutory ground, we need only find grounds to terminate under one of the sections cited by the juvenile court to affirm." *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). Because the mother does not contest the statutory elements under section 232.116(1)(f) on appeal, we affirm the termination of her parental rights under that code section. Nonetheless, we include information about the mother's situation to show why the district court found the children could not be returned to her care. In its final written report to the court prior to the termination hearing, the DHS recommended termination, stating:

> The children have been victimized on several occasions by [the mother]'s husbands or paramours over the life of the case. They have been physically, emotionally, and sexually abused by persons they thought they could trust as well as by one another. They will continue to require mental health services to address their trauma issues.

---

[2] The father alleges a vague due process violation with no specific argument, citation, nor showing that such an argument was made before the district court. As such, we do not address the issue. *See* Iowa. R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *see also Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

[The mother] has engaged in relationships with men that have significantly and viciously abused her children. She has repeatedly defended the men, including [the stepfather] and [her paramour], and has been unable or unwilling to keep her children safe from further abuse at their hands. [The mother] has told the children she didn't believe their trauma disclosures, has said that the perpetrator is a good person and would never hurt her children, and lied about maintaining those relationships when ordered not to. [C.L.] was able to recognize this pattern several years ago and told this worker and his mother that the children should not reside with her if she had a boyfriend. It is an unfortunate pattern of behavior that led to her children repeatedly being abused.

At this time, the children have been removed from their mother's care for fourteen consecutive months. The three younger children were previously out of her care for approximately nineteen months while [C.L]'s mental health and behavioral needs resulted in his removal for twenty-one consecutive months and another twelve months. No trial home visits have occurred since their 8/31/15 removal nor have visits progressed from supervised.

In regards to the father, the report stated:

[The father] has [not] demonstrated any consistent service participation nor [has he] assumed an active parental role in the children's lives. [The father] does not have a permanent home. He enjoys having visits with M.J.S. His past victimization of M.E.S. resulted in the district court not allowing him to have any contact with her. [The father] has not engaged in mental health services.

At the termination hearing, the child protective worker articulated concerns

about the children being placed back in the mother's care:

[T[hese children have been traumatized repeatedly over the years, and in my—my understanding from just conversations I've had with [one of the social workers], you know, all of the kids are continuing to suffer effects from what they have been through, and the last thing they need is to be placed back into an environment where there will be concerns for supervision, concerns for drug use, concerns for choosing inappropriate partners to be around, you know, around the children.

The social worker assigned to the case recommended termination for both the

mother and the father:

These children have endured more chaos and instability and harm and unhappiness than I think almost any other kids I've ever worked with have endured. And they have seen things. They have experienced things. They have done things to each other that I don't know that most people would ever understand. And it's not fair to them, and it's not fair to—to their futures. It's not fair to their future children for them to continue to be abused and for them to not learn how to grow up to be safe, healthy, happy, young people, young adults, parents, employees, all of those things. They won't be able to function if this kind of abuse continues to happen to them. That's what's happening right now with M.E.S. At least that's my fear. They can't—[t]hey just can't continue it.

In its order terminating parental rights, the district court found:

[B]ased on the history of this case and the vast number of services provided, that insufficient progress has been made to allow for return of the children to the parental home of their mother or father[. . .] at this time. [The mother] herself admits that some of the children are not ready to come home and she is not ready to have them home, but resists termination of her parental rights.

We agree with the district court that the record reveals grave concerns about returning the children to the custody of either the mother or the father. The mother has a long history of exposing her children to physical and emotional abuse. Despite her progress in the initial stages of this case, the reports from the last time the children were in her care are deeply troubling and include evidence of the mother's drug use, a relationship with a violent paramour, exposing the children to inappropriate things, and failure to supervise the safety of the children. Over the latter stages of this case, her participation in services has been sporadic, and she has not made enough progress to allow the children to be returned safely to her care. Regarding the father, the only participation he has had over the last several years has been sporadic supervised visits with one of his children. He has consistently failed to participate in services, fulfill any sort of caretaker role, or provide a home that his children could be safely returned to.

His request for an additional six months thus rings hollow after he has failed to engage in offered services for years. Thus, we affirm the termination of both the mother's and the father's parental rights under Iowa Code section 232.116(1)(f).[3]

## IV.    Best Interest and Impediments to Termination

In accordance with Iowa Code sections 232.116(2) and (3), the district court considered "whether proceeding with termination is in the best interest of the child[ren]" and whether any exceptions existed that prevented termination. The court stated:

> The termination of parental rights would not be detrimental to the children because there is a lack of closeness in the parent-child relationship. None of the children over age [ten] objects to the termination. The Court needs to give primary consideration to the children's safety, to the best placement for furthering their long-term nurturing and growth, and to the physical, mental, and emotional condition and needs of the children.
>    As demonstrated in the facts set forth above, the children's safety, and the best opportunity for furthering the children's long-term nurturing and growth, as well as the physical, mental, and emotional condition and needs of the children support termination of parental rights. Further, taking into account all of the facts and possible exceptions to termination, there is no reason to believe the children will be disadvantaged by the termination.

We agree termination was in the best interest of the children and nothing militated against termination.

## V.    Conclusion

We agree the State proved by clear and convincing evidence the mother's parental rights to C.L., H.L., M.E.S., and M.J.S. and the father's parental rights to M.E.S. and M.J.S. should be terminated under Iowa Code section 232.116(1)(f).

---

[3] Both the mother and the father appeal claiming the DHS failed to make efforts to reunite them with their children. Our review of the record confirms the DHS offered a variety of services over an extended period of time in an effort to help the mother and the father reunite with their children. Thus, we reject both of these claims.

We also agree with the district court that termination was in the children's best interest. We therefore affirm the district court's decision.

**AFFIRMED ON BOTH APPEALS.**