# IN THE COURT OF APPEALS OF IOWA

No. 19-0196
Filed May 1, 2019

**IN THE INTEREST OF D.S. and B.S.,**
**Minor Children,**

**M.D., Mother,**
　　　Appellant,

**D.S., Father,**
　　　Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Charles D. Fagan, District Associate Judge.

The parents of two minor children separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Roberta J. Megel of State Public Defender Office, Council Bluffs, for appellant mother.

Sara E. Benson of Benson Law, P.C., Council Bluffs, for appellant father.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Maura C. Goaley, Council Bluffs, guardian ad litem for minor children.

Considered by Vogel, C.J., and Vaitheswaran and Doyle, JJ.

**VAITHESWARAN, Judge.**

A father and mother of two children, born in 2016 and 2017, separately appeal the termination of their parental rights.  Both challenge the grounds for termination and argue termination was not in the children's best interests.  The father also argues the department of human services failed to make reasonable efforts to reunify him with the children.

## I.    *Grounds for Termination*

The district court terminated parental rights pursuant to several statutory provisions.  We may affirm if we find clear and convincing evidence to support any of the grounds.  *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).  We focus on Iowa Code section 232.116(1)(h) (2018), which requires proof of several elements, including proof the children cannot be returned to the parents' custody.

The department became involved with the family based on a complaint that the children were dirty and "had lice treatment running down their faces" when they were left with a babysitter.[1]  Two days after the first complaint, the department learned the parents were evicted from their home and left their children with a friend.  The friend reported marks on them.

The district court removed the children from the parents' custody.  The department initiated services to facilitate reunification, including twice-weekly supervised visits with the children.  The court subsequently adjudicated the children in need of assistance.  The children remained out of parental custody throughout the proceedings.

---

[1] The paternal grandmother testified the "lice treatment" was simply coconut oil.

The father used illegal drugs and exhibited paranoid behaviors. At the termination hearing, the father's mother testified he was in an inpatient recovery program and would likely remain there for thirty to forty-five days. An employee of the recovery center testified the father was actively participating in the "dual diagnosis" treatment program for substance-abuse and mental-health concerns but he only began inpatient treatment the day before the termination hearing. Although he had not used illegal drugs for two months and his mental-health condition improved with medication, the father was not in a position to have the children returned to his custody at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).[2]

The mother's situation was more complicated. She required services targeted to her diagnosis of borderline intellectual functioning. Commendably, the department tailored the services to her needs. All concerned acknowledged the mother had no substance-abuse issues, progressed with therapy, and improved the condition of the home where she lived with her mother and other relatives.

Despite these positive developments, the mother was not in a position to independently care for her children. A service provider testified she would have concerns leaving the children alone with her. She recommended termination of parental rights. Another service provider seconded this opinion, citing "[s]afety concerns about Mom having . . . a lack of supervision with one of the children." She stated the mother was unable to internalize the skills she was taught and this

---

[2] The father separately raises a fourth brief point, arguing the State failed to meet its burden of proof that the child could not be returned to his custody. This argument duplicates his challenge to termination under section 232.116(1)(h). Accordingly, we decline to address it separately.

likely would not change in the next six to twelve months. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (stating a parent's intellectual disability is not alone sufficient grounds for termination but may be a relevant consideration "where it affects the child's well-being"). Because fourteen months had elapsed from removal to termination and we are obligated to view the statutory time frames preceding termination with a sense of urgency, we conclude termination of the mother's parental rights was warranted. *See* Iowa Code § 232.116(1)(h)(1), (3) (prescribing six months of removal in the previous twelve months for children three years or younger); *A.M.*, 843 N.W.2d at 111 ("If a child cannot be returned to the parents [after six months] termination should occur so long as it is in the best interests of the child and the juvenile court does not find an exception to termination that warrants a different result."); *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2001) ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency.").

## II.    *Best Interests and Parent-Child Bond*

We turn to whether termination was in the children's best interests. *See* Iowa Code § 232.116(2). The parents focus on the bond they shared with the children. This argument is more appropriately analyzed as an exception to termination under section 232.116(3). The burden of proving the exception is on the parent. *See In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018).

The father did not testify. Although there was some evidence he shared a bond with the children, he was in no position to safely parent them at the time of the termination hearing.

The mother testified she and the children had "a good bond." She further stated the children were excited to see her at the beginning of visits and she "saw that" it was hard for the children to leave her after visits. The maternal grandmother also testified to the strong bond between the mother and children. But the existence of this bond did not alleviate concerns about the mother's ability to ensure the children's safety on a consistent, unsupervised basis. As one of the visitation supervisors testified, when the mother's focus was on one child, she tended to forget that the other child also needed attention. On our de novo review of the record, we conclude the district court appropriately declined to invoke the exception to termination based on the parent-child bond. *See* Iowa Code § 232.116(3); *A.S.*, 906 N.W.2d at 474.

### III. *Reasonable Efforts*

The father argues the department failed to make reasonable efforts to reunify him with the children. *See In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019); *C.B.*, 611 N.W.2d at 493. Specifically, he asserts the department denied him visits with the children "despite being cleared by his doctor to resume" them.

An employee of the recovery center where the father was housed testified that the father's treating physician had recommended curtailing visits until his mental-health condition stabilized. She stated the physician cleared him for visits just "a couple weeks" before the termination hearing. She agreed there was scant time to reschedule the visits before the termination hearing. We conclude the department did not violate its reasonable-efforts mandate by denying the father visits during the two weeks preceding the termination hearing.

We affirm the termination of parental rights to the children.

**AFFIRMED ON BOTH APPEALS.**