# IN THE COURT OF APPEALS OF IOWA

No. 22-0234
Filed July 20, 2022

**IN THE INTEREST OF O.P.,**
**Minor Child,**

**T.B., Mother,**
    Appellant,

**A.P., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Winnebago County, Karen K. Salic,
District Associate Judge.

A father and mother separately appeal the termination of their parental
rights to a child. **AFFIRMED ON BOTH APPEALS.**

Barbara J. Westphal, Belmond, for appellant mother.

Cameron M. Sprecher of Sprecher Law Office, PLC, Mason City, for
appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney
General for appellee State.

Carrie Jean Rodriguez, Garner, attorney and guardian ad litem for minor
child.

Considered by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**VAITHESWARAN, Presiding Judge.**

A father and mother separately appeal the termination of their parental rights to a child born in 2020.  The father challenges the evidence supporting one of the statutory grounds for termination cited by the district court.  The mother argues termination was not in the child's best interests.  Both parents challenge the district court's refusal to grant an exception to termination based on the parent-child bond and the court's denial of their request for six additional months to facilitate reunification.

## I. Grounds for Termination – Father

The district court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(h) and (*l*) (2021).  The father only challenges the evidence supporting termination under paragraph (h).[1]  Accordingly, we could affirm termination on the unchallenged ground.  *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).  We elect to proceed to the merits of the challenged ground.

Iowa Code section 232.116(1)(h) requires proof of several elements, including proof the child cannot be safely returned to parental custody.  The record reveals that the child was born with morphine in his system.  The district court ordered the child removed from parental custody and later adjudicated him in need of assistance.  The child remained out of parental custody for the balance of the proceedings.

---

[1] The father cites paragraph (f) rather than (h).  With the exception of the age requirement for the child and the required time of removal from the parent's custody, that provision is identical to paragraph (h).

The father progressed on several fronts. He purchased and made structural improvements to a home, maintained his self-employment as a stove-duct cleaner, attempted to make daily contact with a service provider, and developed a strong connection with his child through twice-weekly visits. Indeed, he graduated from fully supervised to semi-supervised visits by the summer of 2021. Despite this progress, there were two key impediments to reunification: his failure to engage in substance-abuse monitoring and treatment and his failure to commit to regular mental-health treatment. The father was asked to participate in random drug testing. He submitted to a test and "tested positive for amphetamines and opiates." Although he tested negative on two subsequent occasions, the department of human services reported that he "may not have tested during the assessment process" and he "had no-shows for testing on three other different occasions." He also failed to appear for a drug test shortly before the termination hearing. As for his mental health, the father was diagnosed with multiple conditions, but he declined to consistently attend therapy sessions. Summarizing his progress, the department employee assigned to the case testified the father "has not been able to do any mental health counseling or substance abuse treatment with any consistency throughout the case." The department also noted that the child had "lived 15 out of 16 months of his life in the care of . . . foster parents" and "[r]eunification efforts . . . with continued opportunity for additional time" were "not successful." On our de novo review, we agree with the district court that the child could not be safely returned to the father's custody.

## II.    *Best Interests—Mother*

The mother argues termination was not in the child's best interests.  *See* Iowa Code § 232.116(2).  She notes that she "maintained contact with the child through visitation," "worked with [a service provider] to improve her parenting skills," and obtained and repaired a house to "allow for [the child's] safe return."

The mother's progress, like the father's, was commendable.  But she used illicit drugs and did not curtail her use despite her receipt of extensive reunification services.  More than one year after the child's removal, she gave birth to twins who tested positive for methamphetamine.  The department reported it was "a significant concern that any positive test would occur given the length of time services [had] been in place and parents' report of sobriety."  The semi-supervised visits that had been afforded the parents in light of their progress reverted to fully supervised visits.

Following the twins' birth, the mother conceded she did not attend individual therapy sessions.  In her words, "I gave up."  Although she entered residential treatment shortly before the termination hearing, the department reported that she "returned home the same day stating she did not believe she needed to be there." She missed two drug tests during the month of the termination hearing.

On our de novo review, we are persuaded the mother's ongoing use of illegal substances posed a safety threat to the child.  We agree with the district court that termination was in the child's best interests.

## III.    *Bond with Child*

Both parents argue the district court should not have terminated their parental rights, given the bond they share with the child.  *See id.* § 232.116(3)(c).

The department employee testified the child "loves to spend time with his parents." That said, the parents are not in a position to safely parent the child on a full-time basis. *See In re A.B.*, 815 N.W.2d 765, 778 n.8 (Iowa 2012) (noting presence of bond but agreeing with "juvenile court's view that . . . the children's safety, long-term nurturing and growth, and physical, mental, and emotional needs would be better served by termination of parental rights notwithstanding that bond"). On our de novo review, we agree with the district court's denial of this permissive exception. *See In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018).

## IV. *Additional Time*

Both parents requested an additional six months to facilitate reunification. But as the department caseworker noted, the parents had "already been granted additional time" as a result of a postponement of the termination hearing. The case worker opined that any additional time would not bring them closer to reunification. On our de novo review, we agree. A licensed psychologist who evaluated the mother noted that "successful treatment for both her rather severe mental health and substance use problems are likely to take an extended amount of time." As for the father, the same psychologist stated the evaluation was "rather unsatisfactory, largely because of his strong attempt to present himself as free from any significant mental health or substance use problems." The psychologist recommended extensive documentation and verification of past mental-health diagnoses and present statements of sobriety. In light of these recommendations, we conclude an additional six months would not have significantly improved the parents' prospects for reunification.

We affirm the district court's termination of the parents' rights to this child.

**AFFIRMED ON BOTH APPEALS.**