**IN THE COURT OF APPEALS OF IOWA**

No. 14-1917
Filed February 25, 2015

**IN THE INTEREST OF E.S.R. AND E.R.,**
**Minor Children,**

**E.R., Father,**
**Appellant.**

_____

Appeal from the Iowa District Court for Winnebago County, Karen K. Salic, District Associate Judge.

The father appeals the juvenile court's termination of his parental rights to his children, E.S.R. and E.R. **AFFIRMED.**

Jane M. Wright, Forest City, for appellant father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Adam D. Sauer, County Attorney, and Andrew Olson, Assistant County Attorney, for appellee State.

Theodore Hovda, Garner, attorney and guardian ad litem for minor children.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**VOGEL, P.J.**

The father appeals the juvenile court's termination of his parental rights to his children, E.S.R. and E.R. He asserts the State failed to prove by clear and convincing evidence grounds to terminate his parental rights under Iowa Code section 232.116(1)(f) and (h) (2013), and claims that he should have been granted an additional six months to work towards reunification. He further argues termination was not in the children's best interest, nor did the State undertake reasonable efforts to prevent termination. We conclude that the father's untreated mental health issues, combined with his extensive and violent criminal history, established grounds to terminate his rights under paragraphs (f) and (h). Furthermore, given he was already granted one six-month extension of time in order to work towards reunification, additional time is not warranted. The juvenile court also properly found termination was in the children's best interests, and reasonable efforts were made on the part of the State. Therefore, we affirm the termination of the father's parental rights.

E.S.R., born April 2010, and E.R., born December 2011, first came to the attention of the Department of Human Services (DHS) due to the mother's methamphetamine use. The children were removed from the home on January 10, 2013, and placed with the maternal grandmother.[1] The children were adjudicated in need of assistance on March 8, 2013.

---

[1] Three other children, who share the same mother as E.S.R. and E.S., were also removed from the home; however, they are not part of this appeal. Additionally, at the time of the termination hearing, the children had been removed from the grandmother's home and placed in foster care.

E.S.R. and E.R. had little to no contact with the father prior to their removal, as the father was incarcerated from June 2011 until August 31, 2013. This incarceration was due to the father's conviction for domestic abuse assault causing injury—in May of 2011, he beat the mother with a vacuum cleaner and a stroller until each item broke, causing the mother to suffer several broken bones and lacerations. Although E.S.R. was present during the assault, she was an infant and sleeping upstairs, and the mother was pregnant with E.R.

The father was also convicted of domestic abuse in 2010 and was the perpetrator of a founded child abuse report for denial of critical care. In this instance, he beat the mother and another woman with his fists and a lawn chair and both suffered injuries. He also chased around one of the mother's other children in a threatening manner, before being stopped by a neighbor. Additionally, the juvenile court noted the father had other prior contact with DHS:

> In 2005 he was identified as the perpetrator of two incidents of physical abuse. In 2007 he was identified as the perpetrator of Denial of Critical Care (supervision) . . . and of physical abuse . . . . In 2009 he was identified as the perpetrator of physical and sexual abuse, and three counts of Denial of Critical Care.

The father's other criminal convictions include possession of marijuana, third or subsequent offense; possession of drug paraphernalia; public intoxication; interference with official acts causing bodily injury; false report to law enforcement; and operating while intoxicated.

Two months following his release from prison, in October 2013, the father contacted DHS. He explained the delay in contacting the agency was allegedly due to a no contact order in place for the protection of the mother and the children. A supervised visit was arranged and the father visited the children on

October 25, 2013.  Because he was in prison when E.R. was born, this was the first time the father had seen her.  The father participated in approximately twenty-three visits over the course of these proceedings, though he never progressed to non-supervised or overnight visitation.  During his time with the children, the DHS worker reported he parented them appropriately, and it was evident he and the children developed a bond; however, the DHS worker had concerns with regard to how he would act when alone with the children, given his lack of patience and untreated mental health issues.

The father has several mental health issues that remain largely unaddressed.  He was diagnosed with borderline personality disorder, schizophrenia spectrum disorder (due to his unusual thoughts, perceptions, and likely hallucinations and delusions), and a learning disorder.  In a psychological evaluation dated January 29, 2014, the psychologist also noted the father had several symptoms of bipolar disorder, but was short of meeting the full diagnostic criteria.  Though the father participated in some mental health classes while in prison, such as an anger management course, he did not follow through with receiving consistent counseling; nor did he regularly take medication to combat his disorders, asserting his doctor took him off the medications.

Despite these mental health problems, the father has pursued employment following his release from prison.  He became employed at a construction company in January 2014, and shortly before the termination hearing, secured a different job working in a hog confinement.  DHS workers testified the father failed to maintain contact with the agency such that the father's employment could be consistently verified.

The father has also moved a number of times since his release from prison. At the termination hearing, he testified he had moved into the mother's trailer three weeks prior, and that she had moved to Texas to live with her father.[2] Additionally, because the father repeatedly refused DHS's requests that he provide his address, he did not receive various family team meeting notes and family safety, risk, and permanency (FSRP) reports over the course of these proceedings. Even as recent as the July 21, 2014 permanency review hearing, the father refused to reveal where he was living. Just prior to the termination hearing, he provided DHS with an address.

In November 2013, almost one year before the termination hearing, the matter came on for a permanency review hearing. At the father's request, he was granted an additional six months to work towards reunification. However, the father made only minimal progress, and the State filed a petition on July 18, 2014 requesting the juvenile court terminate his parental rights to E.S.R. and E.R. A termination hearing was held on October 28, 2014, and the juvenile court, after finding the father had "squandered the past six months," issued an order terminating the father's rights under Iowa Code section 232.116(1)(f) with respect to E.S.R., and paragraph (h) with respect to E.R.[3] The father appeals.[4]

---

[2] A DHS worker testified the mother and father were very secretive about their relationship and that they had a stillborn child in the spring of 2014. The juvenile court noted: "Both [the father and the mother] have engaged in deception, elusiveness and at times out-right dishonesty throughout this case. It is very difficult to find them credible about their progress since they have been so dishonest about everything else."

[3] The State initially filed the petition requesting the father's rights to both children be terminated under paragraph (f), but then moved to amend the petition to substitute paragraph (h) for E.R. The juvenile court granted the motion in its termination order. Though it cited paragraph (f) as the grounds to terminate the father's rights to E.R. in its final conclusions of law, in its analysis and findings of fact, the court concluded the father's rights to E.R. should be terminated under paragraph (h). Thus, while the father

We review termination proceedings de novo.  *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).  The grounds for termination must be proved by clear and convincing evidence.  *Id.*  Our primary concern is the child's best interest.  *Id.*

To terminate the father's rights under Iowa Code section 232.116(1)(f), the State must prove by clear and convincing evidence that the child is four years of age or older, has been adjudicated a child in need of assistance (CINA), has been removed from the home for the last twelve consecutive months, and cannot be returned to the father's custody.  To terminate the father's rights to E.R. under paragraph (h), the State was required to show E.R. was three years old or younger, adjudicated CINA, removed from the home for at least six of the last twelve months, and there is clear and convincing evidence she cannot be returned to the father's care.  *See* Iowa Code § 232.116(1)(h).

Upon review of the record, we agree with the juvenile court the children cannot be returned to the father's care within the meaning of paragraphs (f) and (h).  The father has a significant and violent criminal history, in addition to concerning mental health issues that remain untreated, and, for the most part, unacknowledged by the father.  It is particularly telling that in the twenty-two months in which the case was pending, the father could not progress beyond supervised visits.  Furthermore, the DHS worker noted concerns with the father's failure to acknowledge the impact of his abusive history, as well as questioned

---

contends on appeal that the wrong code section was used, it is clear when viewing the totality of the order that the court terminated the father's rights to E.R. under the proper paragraph, that is, (h).

[4] The juvenile court also terminated the mother's parental rights to these children.  The mother filed a notice of appeal but, due to the lateness of the petition, her appeal was dismissed pursuant to Iowa Rule of Court 6.201(1)(b).

his ability to appropriately parent the children if left alone. While we commend the father for finding employment and making some effort to improve his life, he has been unable to identify and address safety issues that impact the children. He also has not been open to engaging in most of the recommended services that would aid in reunification. With unresolved issues inhibiting even unsupervised visits, it is clear from this record the children would suffer harm if returned to his care.

Furthermore, granting the father an additional six months to work towards reunification will not serve to correct the situation. As the juvenile court noted:

> [The father] has a very long record of child abuse and violence against women. He continues to minimize his actions and has resisted all efforts to ensure that he has the skills necessary to not harm a child or woman in the future. His patience wears thin with the children during even a short supervised visit. As [the DHS worker] noted, batterers are unreceptive to change, and without constant and meaningful work, it is unlikely [the father] will respond any differently to frustration, lack of control and stress any differently than he has in the past.

The record reflects the court's assessment, and we further note that when judging the future actions of a parent, his past conduct is instructive. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). The father has not made any meaningful progress since his release from prison with regard to addressing his mental health issues and past violent behavior. This fact persisted throughout the course of these proceedings, despite the numerous opportunities to receive counseling and other mental health support services offered through DHS. Consequently, we agree with the juvenile court the children cannot be returned to the father's care, and, given the father's lack of progress, additional time would not serve to correct the situation.

Termination of the father's rights is also in the children's best interests. Though they do share a bond with the father, and the father parents them appropriately during supervised visits, we agree with juvenile court's assessment that the father's "choices and his lack of participation throughout the life of the CINA cases have prevented him from being a constant presence in [the children's] lives, let alone a father." We also note the importance of the DHS worker's testimony that the father's actions—such as his violent criminal history and lack of mental health treatment—indicate it is better if he is not the children's caregiver. Therefore, termination is in the children's best interests, and the parent-child bond consideration does not preclude termination. *See* Iowa Code § 232.116(2), (3).

The father further contends reasonable efforts by DHS were not implemented, and therefore the juvenile court erred in terminating his parental rights. Specifically, he cites the fact he did not receive the FSRP reports and provider notes until late in the case, and that no case plan was ever provided to him. However, as the July 28, 2014 DHS meeting notes indicated, the father did not provide DHS with his address until just two months before the termination hearing. Therefore, the documents could not be mailed to him—except to his last known address, which was outdated information—though they were filed with the court upon completion or in time for the review hearings. With regard to the case permanency plan, the court stated that the plan was merely captioned differently, and so the father "argues form over function, which is not important to any consideration necessary in this matter." Given these facts, we do not agree

with the father's assertion that reasonable efforts were not offered such that the juvenile court erred in terminating his rights.

After reviewing the father's arguments, we affirm the juvenile court's order terminating the father's parental rights to E.S.R. and E.R. pursuant to Iowa Code section 232.116(1)(f) and (h), respectively.

**AFFIRMED.**