**IN THE COURT OF APPEALS OF IOWA**

No. 15-0002
Filed March 11, 2015

**IN THE INTEREST OF M.P., A.P., AND D.P.,**
**Minor Children,**

**C.P., Mother,**
**Appellant.**

_____

        Appeal from the Iowa District Court for Linn County, Susan F. Flaherty, Associate Juvenile Judge.


        The mother appeals the termination of her parental rights to her children, M.P., A.P., and D.P.  **AFFIRMED.**


        Jeannine L. Roberts, Cedar Rapids, for appellant mother.

        Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorney General, Jerry Vander Sanden, County Attorney, and Lance Heeren, Assistant County Attorney, for appellee State.

        Julie Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor children.


        Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**VOGEL, P.J.**

The mother appeals the termination of her parental rights to her children, M.P., A.P., and D.P.  She asserts the State failed to prove grounds to terminate under Iowa Code section 232.116(1)(f) and (h) (2013), and due to the parent-child bond termination is not in the children's best interests.  We conclude that because of the mother's lack of progress with respect to housing, employment, and mental health services over the course of these proceedings, she is unable to provide for the children's basic needs and otherwise be a stable parent.  Furthermore, despite the parent-child bond the mother's inability to take care of the children results in termination being in the children's best interests, particularly so they may achieve stability.  Consequently, we affirm the juvenile court's order terminating the mother's parental rights.

M.P., born February 2008, A.P., born November 2010, and D.P., born June 2012, first came to the attention of the Iowa Department of Human Services (DHS) in November 2012.  The mother and children were living in a transitional housing program, and it was reported the apartment was unsanitary.  After the DHS worker made several unsuccessful attempts to contact the mother, she interviewed the program director, who reported the mother was often absent, the children were dirty, and they sometimes stated they were hungry.  Upon inspection of the apartment, it was revealed the floor was covered with garbage—including sanitary pads and rotten food—and D.P.'s crib was full of items, preventing D.P. from using the crib.  Several unsafe objects such as knives, scissors, medication, dirty diapers, and cigarette butts were also strewn about the apartment within reach of the children.

Once DHS contacted the mother and she was informed she was at risk of having the children removed due to the unsanitary conditions of the apartment, she voluntarily placed the children with her father while she cleaned the residence. The DHS assessment was founded for denial of critical care and failure to provide adequate shelter naming the mother as the responsible caregiver. On November 15, 2012, the mother successfully brought the apartment up to acceptable standards, and the children were returned to her care. However, the mother was unable to maintain the necessary cleanliness, and she lost her place in the housing program.

After being removed from the housing program, the mother and children stayed with one of the mother's friends. On March 4, 2013, a man attacked the mother with a knife and sexually assaulted the mother's friend. The children were present in the home when this occurred. The mother stated that she could not care for the children due to the trauma from the assault and she was afraid she could not keep the man out of her home. Consequently, the children were removed on March 6, 2013. D.P. was placed with his father—though he was later removed and placed in a foster home—and A.P. and M.P. were placed in foster care.

The children were adjudicated in need of assistance (CINA) following a hearing on March 13, 2013, in which the mother agreed the children should remain out of her care. Drug testing was performed, and A.P. tested positive for methamphetamine. The mother stated she did not know how A.P. was exposed to the drug. The mother also participated in only nine drug screenings—all negative—out of approximately forty-four that were requested.

The following services were offered to the mother during the pendency of this proceeding: supervised visitation; drug testing; substance abuse and mental health screening and treatment; parenting instruction; family team meetings; and family safety, risk, and permanency services. However, the mother did not take advantage of these services. She continued to be unemployed for the majority of the time, with a brief stint at two fast food restaurants, one of which she obtained shortly before the termination hearing. She also failed to find housing, remaining with friends or relatives, and was therefore unable to demonstrate she could maintain a safe environment for the children. She did not attend any counseling or substance abuse treatment, though she did complete an evaluation.

While initially it was difficult for DHS to contact the mother to arrange supervised visits, the mother was relatively consistent with attending visits during the few months leading up to the termination hearing. However, despite the notable bond between the mother and the children, the DHS worker maintained concerns that the mother could not properly care for all three children long-term. Some progress was made in that visits progressed to semi-supervised, but the children were never placed in the mother's care.

Due to the mother's inability to care for the children, in spite of the many services offered, the State petitioned to terminate her parental rights. A contested hearing was held on June 27 and July 8, 2014, and in an order dated December 16, 2014, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(f) and (h).[1] The mother appeals.

---

[1] The juvenile court also terminated the parental rights of D.P.'s father. Though he appealed, the appeal was untimely and therefore dismissed.

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.*

To terminate the mother's parental rights pursuant to Iowa Code section 232.116(1)(f), the State must prove: (1) the child is four years of age or older; (2) the child has been adjudicated CINA; (3) the child has been removed from the physical custody of the mother for at least twelve of the last eighteen months, or for the last twelve consecutive months; and (4) there is clear and convincing evidence that at the present time the child cannot be returned to the custody of the mother as provided in section 232.102. To terminate under paragraph (h), the State must show: (1) the child is three years of age or younger; (2) the child has been adjudicated CINA; (3) the child has been removed from the physical custody of the mother for at least six months of the last twelve months, or for the last six consecutive months; and (4) there is clear and convincing evidence that the child cannot be returned to the mother's custody.

Given the mother's inability to show she can properly parent the children, it is evident they cannot be returned to her care within the meaning of paragraphs (f) and (h). As the juvenile court noted:

> Since the filing of the petition for termination of parental rights, the level of progress by [the mother] has been minimal. At the time of the termination hearing, [the mother] continued to be homeless and continued to move between friends and family. Because of her transiency, there has been no opportunity to evaluate her ability to maintain a safe, sanitary home for her children. [The mother] has not been able to maintain employment. Her cooperation with drug/alcohol testing has not been consistent. She continues not to participate in either mental health or substance abuse counseling although her history and the evaluations provided to this court indicate that both would benefit her and hopefully assist in

improving her judgment and decision making. [The mother] occasionally missed some visits with the children but, overall, her attendance at visitation is a positive for her . . . . [The mother] and the children have an obvious, loving bond. However, [the mother] has difficulty supervising all three children and managing their behavior.

The record supports the court's assessment, particularly the testimony of the DHS workers, who stated they believed the children could not be returned to the mother's care due to her inability to parent the children adequately. In determining the future actions of the parent, her past conduct is instructive. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). It is clear here the mother cannot maintain stable housing or employment and has not engaged in substance abuse or mental health treatment; nor has she been able to demonstrate she is able to provide for the children safely. Therefore, we agree with the juvenile court the State proved grounds to terminate her parental rights under paragraphs (f) as to M.P. and (h) as to A.P and D.P.

Furthermore, termination is in the children's best interest. It is undisputed the mother and children share a bond. However, the record demonstrates she has been unable to acquire the skills necessary to parent the children in a safe and stable environment. "We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998); *see also* Iowa Code § 232.116(2). As the DHS worker noted:

> [T]he children are very bonded to their mother, and I think that is important, but the problem is that since the case has been open, she has struggled with these obstacles from the very beginning and continues to. I'm afraid that emotionally, if we allow extra time and she doesn't achieve those goals, how detrimental will that be to their emotional health. I know she has been trying, and it's difficult

because the kids are bonded with her, but they also need a permanent placement.

Given this testimony, as well as the mother's inability to acquire stable housing from the time the children were removed in March 2013 until the termination hearing—or otherwise demonstrate she is able to parent the children full-time—termination of her parental rights is in the children's best interest, particularly so they can achieve stability. Consequently, we affirm the order of the juvenile court terminating the mother's parental rights.

**AFFIRMED.**