# IN THE COURT OF APPEALS OF IOWA

No. 15-0731
Filed July 9, 2015

**IN THE INTEREST OF J.M.,**
**Minor Child,**

**M.M.A., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

The mother appeals from the juvenile court's termination of her parental rights to her child, J.M. **AFFIRMED.**

Kevin Hobbs, West Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John Sarcone, County Attorney, and Annie Fox Reynolds, Assistant County Attorney, for appellee State.

Karl Wolle of the Juvenile Public Defender's Office, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, P.J.**

The mother appeals the juvenile court's termination of her parental rights to her son, J.M. Though she concedes there was clear and convincing evidence to terminate her rights pursuant to Iowa Code section 232.116(1)(e) and (f) (2013), she contests the termination of her rights under paragraph (i). She further argues the relative-placement consideration should preclude termination, as she believes J.M. could be placed in Mexico with his maternal grandmother or with the maternal aunt in Iowa; she also relies on the parent-child bond when arguing termination is not in J.M.'s best interests. We affirm the termination of the mother's parental rights under paragraphs (e) and (f). Furthermore, we agree with the district court J.M. would again be in a dangerous situation were he to be placed with either relative; therefore, termination is in J.M.'s best interests. Consequently, we affirm the juvenile court's order terminating the mother's parental rights.

J.M., born August 2006, first came to the attention of the Iowa Department of Human Services (DHS) on February 5, 2014. A car in which the mother was a passenger was stopped by law enforcement and three pounds of methamphetamine was found in the vehicle. J.M. was in the car, aware of, and had access to, the drugs; he was removed from the mother's care the following day.[1] He was adjudicated in need of assistance on May 22, 2014. The mother was imprisoned with a ten-year sentence due to her conviction stemming from her drug possession and distribution activity. She remained in prison at the time

---

[1] J.M. was placed in foster care, at the same home in which he remained at the time of the termination hearing.

of the termination hearing and testified she would be deported upon her release. Additionally, upon further investigation, authorities discovered J.M. was being used in the mother's drug trafficking operation. The mother would go to Mexico—specifically, to the town she was from and where her family lived—and obtain the drugs. She would then smuggle them into the United States and bring them to Iowa while accompanied by J.M., utilizing him to assist in the transportation of the drugs.

A review hearing was held on September 8, 2014. Prior to the hearing the maternal grandmother, who lives in Mexico, moved to intervene. The court denied the motion, holding her interests with regard to J.M. aligned with the mother's. In the summer and late fall of 2014, the maternal grandmother traveled to the United States to advocate for J.M. to be placed with her. She denied knowledge of, and involvement in, the mother's drug trafficking activity. The permanency goal was set to place J.M. in Mexico with his grandmother. The maternal aunt, who lives in Iowa, also intervened and indicated she would be willing to be a placement for J.M.

A home study was performed on the grandmother's home in coordination with the Mexican Consulate. Upon review of the evidence in the case, DHS and the court determined the grandmother was not being truthful regarding her knowledge of the drug trafficking and would not be able to keep J.M. safe. Following the termination hearing, the court concluded the maternal aunt would also not be a suitable placement for J.M., given she would likely expose him to the danger of drug trafficking as well. It was also established that J.M. and the

mother shared a bond, but the bond was not strong enough to preclude termination.

J.M. has suffered extreme trauma due to his involvement in the mother's drug trafficking activity. In her report to the court, the DHS worker noted:

> [H]e has struggled a great deal throughout this case with his fear of the past. He would regularly have nightmares about the drug trafficking operations with his mother and men that scared him. [J.M.] has been in regular therapy services and these things appear to be getting better; he is having less frequent and less intense nightmares about this trauma. [J.M.] does continue from time to time to struggle with the professionals that come into his home, including DHS, attorneys and in home services as he continues to be scared from time to time that he is going to have to leave his foster family which he now calls home . . . . [Therapy] is something that will need to be continued well into the future in order to help him continue to maintain the daily stressors of life and the fears that he continues to face from time to time.

The State filed its petition to terminate the mother's parental rights on January 12, 2015. A contested hearing was held on March 6, 2015, in which the mother testified by phone. On April 19, 2015, the juvenile court issued an order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(e), (f), and (i).[2] It further found that, though J.M. clearly had a loving grandmother in Mexico, it was extremely dangerous to place him there, given the high volume of drug trafficking and violence present in the area and the mother's personal involvement in the trafficking; it further noted the aunt was not a suitable placement either, due to similar concerns. It also concluded the parent-child

---

[2] The State did not request the mother's rights be terminated under paragraph (e) in the termination petition; however, it orally moved to amend during the hearing, and the juvenile court granted its motion.

bond consideration did not preclude termination, and that termination was in the child's best interests. The mother appeals.[3]

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.* When the juvenile court terminates parental rights on more than one statutory ground, we only need find grounds to terminate under one of the sections cited by the juvenile court to affirm. *Id.*

The mother challenges the juvenile court's conclusion her rights should be terminated pursuant to paragraph (i). However, she does not contest termination under paragraphs (e) and (f); consequently, we need not address her claim as to paragraph (i), as we need only one ground on which to affirm—here, either of the unchallenged paragraphs (e) and (f). *See S.R.*, 600 N.W.2d at 64.

The mother further argues either the grandmother or aunt would be a suitable placement, thus precluding termination under the relative-placement exception of Iowa Code section 232.116(3)(a). As an initial matter, J. M. has not been placed with a relative; therefore, pursuant to the stature, this exception technically does not apply. Morever, the record demonstrates this is not in J.M.'s best interests. As the juvenile court noted:

> The Court remains convinced that the particular community to which [J.M.] would be sent in Mexico presents high level safety concerns associated with the remnants of [his mother's] activities.
> The Court is convinced that [J.M.'s] safety could not be provided for by his biological family.

---

[3] The court also terminated the rights of J.M.'s putative father; however, he was not present during the pendency of these proceedings, and he does not appeal.

The Court is convinced that if [J.M.] were placed with any known or identified biological family member, be that his Aunt in Marshalltown (intervenor) or his grandmother in Mexico, the requisite level of security and protection could not be provided to this Court's satisfaction and the minimal standard which he deserves.

The record supports this assessment. Both DHS and the court concluded J.M. would not be safe due to the family's involvement in the drug trafficking operation and the dangerous environment in which that would again place J.M. We agree. Consequently, J.M. should not be placed with the other family members, and, therefore, the relative-placement consideration of Iowa Code section 232.116(3)(a) does not preclude termination.

Nor does the parent-child bond preclude termination. Though the mother and J.M. share a bond, as the DHS worker noted: "While it is clear that [J.M.] cares about the well-being of his mother and wants to ensure that she is safe, this bond does not seem to be strong enough to not terminate the mother's parental rights." Moreover, the mother is incarcerated and has had little contact with J.M. throughout the pendency of these proceedings, with her last visit in approximately April or May 2014. We further find it encouraging that, as the juvenile court noted:

> [J.M.'s] foster parents have met all of his other needs over the now more than one year period of time that he has been in their home. The Court is convinced the foster parents understand [J.M.], his special language and cultural needs and unique history of trauma, and they will continue to act in his best interest and do their utmost to keep him mentally, emotionally, and physically safe.

It is also important J.M. be afforded permanence. *See* Iowa Code § 232.116(2); *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998).

With these considerations in mind, we agree with the district court termination of the mother's parental rights is in J.M.'s best interests. Nor do the considerations found in Iowa Code section 232.116(3) preclude termination. Consequently, we affirm the order of the juvenile court.

**AFFIRMED.**