# IN THE COURT OF APPEALS OF IOWA

No. 15-1787
Filed December 23, 2015

**IN THE INTEREST OF T.B.,**
**Minor Child,**

**S.B., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Cherokee County, Mary L. Timko, Associate Juvenile Judge.

A mother appeals the termination of her parental rights to her child, born in 2011. **AFFIRMED.**

Theresa Rachel of Deck Law, Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Lesley Rynell of Public Defender's Office, Sioux City, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**VAITHESWARAN, Judge.**

A mother appeals the termination of her parental rights to her child, born in 2011. She contends (1) the district court should not have denied her motion to dismiss the termination petition based on the State's failure to have her served with process, (2) the State failed to prove the grounds for termination cited by the district court, and (3) termination was not in the child's best interests.

### I.       Motion to Dismiss

The mother moved to dismiss the termination petition because she was not personally served with process. *See* Iowa Code § 232.112(3) (2015) (requiring personal service of termination petition or service by restricted certified mail, not less than seven days prior to the termination hearing). The district court denied the motion after noting the mother was present for the termination hearing and had filed a designation of exhibits and witnesses. On appeal, the mother challenges this ruling, but not on the basis of the State's failure to comply with the statutory methods of service. She argues the petition should have been dismissed for failure to state a claim:

> Evidence at trial demonstrated [she] had gained the necessary parenting and life management skills to now parent [the child] fulltime. [She] was mentally, financially, and physically capable . . . to have [the child] returned to her fulltime care.

This articulation of her argument is identical to her second contention, which we will proceed to address.

### II.       Evidence Supporting Grounds for Termination

The district court terminated the mother's parental rights pursuant to several statutory provisions. We may affirm if we find clear and convincing evidence to

support any of the grounds cited by the juvenile court. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). We are persuaded section 232.116(1)(h) was satisfied. This provision requires proof of several elements, including proof the child cannot be returned to the parent's custody.

Our de novo review of the record reveals the following facts. The Department of Human Services became involved with the family in 2012 after discovering that the child's father severely abused the child's sibling. The mother did not report the incident to authorities. In the ensuing years, the department provided a variety of reunification services and returned the child to the mother's care several times. Each time, the mother had difficulty attending to the child's physical and emotional needs.

The district court summarized the situation as follows:

> A review of the record and testimony at the termination of parental rights hearing clearly and convincingly show that [the mother] was given above and beyond every reasonable effort available to reunify with [the child]. Early on, [the child] and his sister, [], were placed with their mother on a trial home visit. That placement did not last. [The children] were placed back into foster care. Monumental efforts were again initiated to work toward reunification. Still, evidence to reunify was not forthcoming. Despite the lack of real, sustained progress, the children were returned to [the mother], with little to no benefit being seen to [the children]. Finally, instead of removing the children from [the mother's] care yet again, [the mother] was given yet another opportunity to maintain [the children] in her care by being allowed to move with the children to the state of Oklahoma to reside with relatives.
> This move[] proved to be harmful to both children and only further delayed permanency for these siblings. . . . [The mother's] grandmother, [], with whom the children were living, reported significant concerns about [the child's] behaviors and [the mother's] behaviors toward [the grandmother] and the children. The social worker from Oklahoma who was overseeing the placement . . . had such significant concerns about the children that a request was made to bring the children back to Iowa. The children were brought

> back and services were again initiated to assist [the mother] in remedying her lack of parenting skills when she arrived back in Iowa about a month later. All the while, [the child's] behaviors were becoming increasingly difficult, out-of-control, and at times, impossible to handle.
>
> As the situation became more and more dysfunctional, an effort was made to try and salvage whatever relationship was present between [the child] and [the mother]. . . . As the evidence demonstrates, . . . [the mother] was unable to parent [the child] and [the child's] behaviors continued to spiral downward.
>
> . . . .
>
> The court finds that [the mother] has been unable to demonstrate an ability to adequately parent [the child], keep him safe, and recognize danger situations into which she has placed him or into which the child finds himself without her intervention.

The record contains clear and convincing evidence to support these findings. No useful purpose would be served by providing an extensive summary of this evidence. It is sufficient to cite the department case manager's testimony of "ongoing concerns with parenting [and] safety of [the child] . . . if he was in [the mother's] care full time." Even a service provider who supervised several visits and who spoke positively about the mother's interactions with the child, saw a need for continued supervision.

We recognize the child's numerous moves from foster home to foster home may have contributed to his disruptive behaviors. But the mother was afforded multiple opportunities to end this cycle and reassume a full-time parenting role. Her lack of success in implementing the skills she learned warranted termination of her parental rights.

### III.     *Best Interests*

Termination must be in the child's best interests. *In re P.L.*, 778 N.W.2d 33, 39-40 (Iowa 2010); Iowa Code § 232.116(2). While mother and child shared a bond, the bond was often a toxic one. By the mother's own admission, the child

hit her and acted aggressively towards her until shortly before the termination hearing. Because she could not manage these behaviors, termination was in the child's best interests.

**AFFIRMED.**