# IN THE COURT OF APPEALS OF IOWA

No. 18-1889
Filed December 19, 2018

**IN THE INTEREST OF M.S.,**
**Minor Child,**

**M.S., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Webster County, Angela L. Doyle,
District Associate Judge.

A father appeals the termination of his parental rights to his child.
**AFFIRMED.**

Douglas Cook of Cook Law Firm, Jewell, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant
Attorney General, for appellee State.

Neven J. Conrad of Baker, Johnsen, Sandblom & Lemmenes, Humboldt,
guardian ad litem for minor child.

Considered by Danilson, C.J., and Potterfield and Doyle, JJ.

**DOYLE, Judge.**

A father appeals the termination of his parental rights to his child.[1]  He contends the State failed to prove the grounds for termination by clear and convincing evidence.  He also contends that termination is contrary to the child's best interests and asks for additional time to reunite with the child.  We review these claims de novo.  *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

The child was born in 2014 and came to the attention of the Iowa Department of Human Services (DHS) in July 2015.  At the time, the child lived with the mother, who reported that the father had only one contact with the child in the first eighteen months of the child's life.  Although the father did not begin participating in services offered by the DHS until the child was removed from the mother's care in November 2016, his visitation gradually expanded to include overnight and weekend visitation, and a trial home visit beginning in April 2017.  In May 2017, the juvenile court placed the child in the father's care under the supervision of the DHS.  However, this placement ended in November 2017 after the father lost his housing and signed an agreement to place the child in foster care while he located new housing.  When the father failed to obtain housing by the time the agreement expired in February 2018, the juvenile court removed the child from his care.

The record shows the father has had limited contact with the child since November 2017.  Since that time, the father has had four visits with the child: one in December of 2017 and on March 27, April 3, and July 11 of 2018.  The State

---

[1] The mother's parental rights to the child were also terminated.  She is not a party to this appeal.

filed a petition to terminate the father's parental rights, and the termination hearing occurred in August 2018. The juvenile court entered an order terminating his parental rights in October 2018, and the father appealed.

Before terminating parental rights, the juvenile court must find clear and convincing evidence supporting one of the grounds for termination listed under Iowa Code section 232.116(1) (2018). *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). The juvenile court found clear and convincing evidence supported the grounds for termination of the father's parental rights on the grounds listed in section 232.116(1)(b) and (e). We may affirm the termination if clear and convincing evidence supports one of these grounds. *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).

The grounds for termination under section 232.116(1)(e) are met when clear and convincing evidence establishes the following:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

There is no disputing the first two elements for termination under this section were met. As to the question of whether the father has maintained significant and

meaningful contact with the child in the six months leading up to termination, we find he has not. Although the DHS offered the father weekly visits with the child, the record shows the father attended only three visits in the six months preceding the August 2018 termination hearing, missing twenty-three visits out of the twenty-six available. At the time of the hearing, the father was employed but living in a homeless shelter. When asked why he had so few visits with the child in the last six months, the father answered:

> Cause I'm running back and forth out of town and I had a lot on my mind then. When I came back, I made a visit and then I called for my other visit and the schedule was taken up and then when that tornado hit in Marshalltown, I went down there, I worked down there for four days, then I called, tried to get another visit.

The father admitted he had not maintained significant contact with the child. The DHS social worker testified that when the father

> came into the office to see me in November 2017 and signed the voluntary placement agreement, he indicated that he needed 30 days to get a residence, get day care arranged and then whatever else he needed to get arranged to have [the child] back in his care and that it's nine months later and we're still in the same position. Also the fact that during that time, there was very limited contact from him, he did not engage and request visitations as he could have.

At the hearing, the father stated he still needed another three to six months to obtain suitable housing before the child could be returned to him. Under the facts presented to us, we agree with the juvenile court that the father did not maintain "significant and meaningful contact with the child during the previous six consecutive months and . . . made no reasonable efforts to resume care of the child despite being given the opportunity to do so."

Having found the grounds for termination under section 232.116(1)(e) have been established by clear and convincing evidence, we must consider whether

termination is in the child's best interests. *D.W.*, 791 N.W.2d at 706-07 ("If a ground for termination is established, the court must, secondly, apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights."). In making the best-interests determination, our primary considerations are "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (quoting Iowa Code § 232.116(2)). The "defining elements in a child's best interest" are the child's safety and "need for a permanent home." *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially).

The father argues termination is contrary to the child's best interests, citing his past success in gaining custody of the child. Although it is true that a parent's past conduct is probative when determining the future quality of the parent's care, *see In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012), the father's past conduct largely consists of long periods when the father has failed to maintain contact with the child. The child did well when placed in the care of the father and his girlfriend, but once the relationship with his girlfriend ended, so did the father's involvement with the child. The child is doing well in a foster care placement and has bonded with the family, who is willing to adopt the child.

The father argues he should be granted additional time to reunite with the child. *See* Iowa Code § 232.104(2)(b) (allowing the court to continue placement of the child for an additional six months if it is determined "that the need for removal of the child from the child's home will no longer exist at the end of the additional

six-month period"). However, delaying permanency is not in the child's best interests. Children are not equipped with pause buttons, and delaying their permanency in favor of the parents is contrary to the children's best interests. *See A.M.*, 843 N.W.2d at 112 (noting children must not be deprived permanency on the hope that someday the parent will be able to provide a stable home); *In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987). Once the grounds for termination have been proved, time is of the essence. *See A.C.*, 415 N.W.2d at 614 ("It is unnecessary to take from the children's future any more than is demanded by statute. Stated otherwise, plans which extend the [statutory] period during which parents attempt to become adequate in parenting skills should be viewed with a sense of urgency."); *see also In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989) (noting that once the time period for reunification set by the legislature has expired, "patience on behalf of the parent can quickly translate into intolerable hardship for the children"). Three years have passed since the child came under the supervision of the juvenile court. Delaying permanency an additional six months is contrary to the child's best interests. Accordingly, we affirm.

**AFFIRMED.**