# IN THE COURT OF APPEALS OF IOWA

No. 20-1692
Filed July 21, 2021

**IN THE INTEREST OF G.R.,**
**Minor Child,**

**J.R., Father,**
        Appellant.
_____


        Appeal from the Iowa District Court for Louisa County, Emily Dean, District

Associate Judge.


        A father appeals the termination of his parental rights to his child.

**AFFIRMED.**


        Mark J. Neary, Iowa City, for appellant father.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

        Heidi D. Van Winkle, Burlington, attorney and guardian ad litem for minor

child.


        Considered by Bower, C.J., Greer, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2021).

**MAHAN, Senior Judge.**

A father appeals the termination of his parental rights to his child, G.R., born in 2013.[1]  He challenges the sufficiency of the evidence for termination.  Upon our review, we affirm.

## I.    *Background Facts and Proceedings*

This family came to the attention of the department of human services in 2013 due to concerns about domestic violence between the parents in the presence of the child, the mother's unaddressed mental-health issues, and the father's substance-abuse issues.  G.R. was removed from the parents' care, adjudicated in need of assistance (CINA), and placed with the paternal grandmother.  The paternal grandmother lived with B.H., her "longtime paramour," and a child they adopted together.

In 2014, the juvenile court appointed the paternal grandmother (hereinafter "guardian") as the guardian for the child and closed the CINA case by transferring jurisdiction of the child's guardianship to probate court.  *See* Iowa Code § 232.104(7)(b) (2013) ("[T]he court may close the child in need of assistance case by transferring jurisdiction over the child's guardianship to the probate court.").  From then on, the parents maintained essentially no contact with the child and did not participate in services.

In April 2019, the guardian moved out of the home she shared with B.H. and the children, and in June, G.R. began living with her.  The department became involved shortly thereafter, due to concerns about the guardian's excessive use of

---

[1] The mother's parental rights were also terminated.  She does not appeal.

alcohol, lack of supervision, and sexual abuse of G.R. by his great-uncle. G.R. was removed from the guardian's care and adjudicated CINA. He was placed with B.H. under department supervision, where he has remained.

Services were offered to the parents as well as the guardian.[2] The court observed that neither parent had cared for G.R. or had any meaningful contact with him since the guardianship was put in place in 2014. The court's February 2020 review order noted a "lack of progress of [the] parents to assume care of the child." G.R. engaged in some supervised phone visits with the parents, but as of March 2020, he "refused to participate in these calls" due to becoming "upset."

In September 2020, the State filed a petition to terminate parental rights. The termination hearing was held in December. The department caseworker testified the parents had "zero contact" with G.R. since the cessation of phone visits in March. And G.R. had not had any physical visits with the parents. The parents had not "followed up" on department recommendations and services offered. The caseworker testified it had been "several months" since she had contact with the father because "he told [her] not to contact him again" and the father "told [her] he's not going to work harder than everybody else to get his child in his care."

Meanwhile, G.R., who was seven years old, was "doing well in school" and "displayed no behavioral concerns." His placement with B.H. and B.H.'s adopted son (whom G.R. considered to be his "sibling") allowed him "to continue to reside in the same home [he] has known his whole life along with remaining in the same

---

[2] The guardianship has since been terminated.

school." G.R. was "very bonded" to B.H. and called him "dad." The department caseworker and guardian ad litem recommended termination of parental rights.

Following the termination hearing, the court entered its order terminating parental rights. The father appealed.

## II.    *Standard of Review*

Appellate review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.    *Discussion*

The district court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(b), (d), (e), and (f) (2020). The father challenges the sufficiency of the evidence supporting the grounds for termination cited by the juvenile court. Although the court terminated parental rights on more than one statutory ground, we need only find termination is proper on one ground. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). We will address the termination of parental rights under section 232.116(1)(f). The father does not contest the child is over four years of age, has been adjudicated CINA, and has been removed from the parents' physical custody for more than twelve months. Iowa Code § 232.116(1)(f)(1)–(3). He also does not seem to contest that the child could not have been returned to his custody at the time of the termination hearing. *See id.* § 232.116(1)(f)(4). Instead, he claims, "While the juvenile court could place the child temporarily with one or both of his parents during the pendency of the juvenile

case, the fact is that the child's ultimate placement would be always subject to the determination of the guardian and/or probate court in the guardianship." He further argues:

> To allow a parent's parental rights to be terminated to their child, when said child is already not under their care because the child is in a guardianship and placed elsewhere by the guardian, would effectively mean that any parent should immediately and repeatedly contest any new or existing guardianship action, or, in the alternative, risk losing their parental rights if it turns out the child suffers harm while under the care of the guardian.

Preliminarily, the record belies the father's contention that "[t]he goal was not to return G.R. to his parents, but instead to his guardian/grandmother." The court's November 2019 dispositional order provided that "reunification services be[] provided to the child's parents and guardian" and ordered the parents to engage in services. Indeed, until September 2020, the goal remained "family reunification," with services being provided to the parents as well as the guardian. The court's September 2020 permanency order stated: "[W]ith respect[] the child's biological parents[], the goal is *hereby changed* to termination of parental rights and adoption, as set forth in Iowa Code section 232.104(2)(c). The Iowa Department of Human Services is relieved of providing reunification services to the child's biological parents." (Emphasis added.)

We turn to the father's contention that the fact G.R. was placed in a guardianship precludes termination of parental rights pursuant to section 232.116(1)(f). The father does not "point[] us to—nor do we find—any authority for such an interpretation of the language of the last element of paragraph (f)." *See In re J.R.*, No. 19-1118, 2019 WL 5790915, at *4 (Iowa Ct. App. Nov. 6, 2019). As this court has previously found, the child being in a guardianship does not preclude

the finding that the child cannot be returned to the care of a parent. *See id.* ("Having reviewed chapter 232 and relevant cases, we find unreasonable the interpretation that the language of section 232.116(1)(f)(4) is somehow inapplicable or changed if the child has been placed in a guardianship under section 232.104 as part of a permanency determination.").

In any event, despite the father's claim at the termination hearing that he could "make arrangements" for G.R. to move in with him "today," his attorney requested an additional six months to allow the father time to complete a mental-health evaluation. But the father's unresolved mental-health issues were only one of many concerns. The father told caseworkers that "he likes to smoke marijuana and there is nothing wrong with smoking marijuana and he did not feel he needed substance abuse treatment." And the parents' "relationship was full of violence," which included twelve interactions with police since July 2020. Although the parents' divorce was finalized in October 2020, the mother testified at the termination hearing that she intended to "continue [their] relationship" and the father testified that despite the no-contact order between them, the mother stayed with him "sometimes."

But most importantly, the father has had no contact with G.R. since March 2020, and prior to that they had only participated in fifteen-minute supervised phone calls. The court noted that G.R. "did not know his biological parents and was introduced to them during his first phone visit with them." The caseworker opined the father "does not have a strong bond with [G.R.] due to not having contact for many years." Uprooting the child from the only home, family, and life that he had ever known would be detrimental to his best interests. Simply put, the

evidence shows the child could not be safely returned to the father's care. We affirm the decision of the juvenile court to terminate the father's parental rights.

**AFFIRMED.**