# IN THE COURT OF APPEALS OF IOWA

No. 21-1471
Filed February 16, 2022

**IN THE INTEREST OF W.R.,**
**Minor Child,**

**W.H., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Crawford County, Mary L. Timko, Associate Juvenile Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Peter A. Goldsmith of Boerner & Goldsmith Law Firm, P.C., Ida Grove, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee, State.

Dean Fankhauser of Vriezelaar, Tigges, Edgington, Bottaro, Boden & Lessman, L.L.P., Sioux City, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

In 2016, when this child was ten years old, she reported being sexually abused by her mother's boyfriend.[1] When the child's mother became aware of the abuse, she confronted her boyfriend about it. He denied it. Thereafter, the mother began supporting her boyfriend's denial, accused her daughter of lying about the abuse, and conspired with the boyfriend to coerce her daughter into recanting the allegations.

Child-in-need-of-assistance (CINA) proceedings were started, resulting in an adjudication. As one of several safety measures, the juvenile court removed the child from the mother's custody, eventually placing the child in a guardianship with the child's maternal grandmother. The mother and grandmother circumvented multiple safety measures, including a no-contact order that prohibited contact between the boyfriend and the child, instead allowing the boyfriend continued contact with the child. As a result, the boyfriend again sexually abused the child as recently as 2020. Additional CINA proceedings were started, and the child was removed from the grandmother's custody and placed with other relatives. The child was again adjudicated CINA, and these termination-of-parental-rights proceedings soon followed.

As the mother continued to side with her boyfriend and attempted to coerce the child into recanting her allegations, the child spiraled into depression and

---

[1] The nature of the relationship between the man and the child's mother is unclear from the record. At various places in the record, the man is referred to as the mother's boyfriend, the mother's paramour, and the child's stepfather. Finding no compelling evidence that the man and the child's mother were married, we will refer to him as the mother's boyfriend or just boyfriend.

thoughts of suicide. Nevertheless, she did not recant. The boyfriend was eventually convicted of multiple crimes, including: sexual abuse in the second degree, sexual abuse in the third degree, lascivious acts with a child, assault with intent to commit sexual abuse, conspiracy, lascivious conduct with a minor, tampering with a witness, dissemination of obscene material to a minor, and violation of a no-contact order.

After a hearing, the juvenile court terminated the mother's rights pursuant to Iowa Code section 232.116(1)(d), (f), and (i) (2021). The child's father's parental rights were also terminated. The mother appeals. The father does not.

We review termination-of-parental rights rulings de novo. *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021). With de novo review, we give weight to the juvenile court's factual findings, particularly regarding witness credibility determinations, but we are not bound by them. *Id.* Review of a termination ruling follows a three-step process of determining whether: (1) statutory grounds for termination have been established; (2) termination is in the child's best interests after applying the framework of section 232.116(2); and (3) whether any of the permissive statutory exceptions of section 232.116(3) should preclude termination. *In re P.L.*, 778 N.W.2d 33, 40–41 (Iowa 2010). If a parent does not challenge one of the steps, we do not address that step. *Id.* at 40.

Of the three steps, the mother challenges only the first—the juvenile court's determination that the State established statutory grounds for termination. When, as here, the juvenile court terminates a parent's rights on more than one statutory ground, we can affirm on any ground supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to address the ground under section

232.116(1)(d), which permits termination of parental rights upon clear and convincing proof of both of the following:

> (1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.
> (2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstances which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

The mother only challenges the second of these elements. She asserts that the only circumstances that led to the CINA adjudication were the presence of the boyfriend and his access to the child. Because the boyfriend has been convicted of numerous crimes and faces a lengthy prison sentence followed by deportation, the mother contends the circumstances that led to termination no longer exist.

We agree that the boyfriend's expected lengthy prison sentence and subsequent deportation may eliminate some of the circumstances that led to the CINA adjudication. However, those are not the only circumstances to consider. This child was sexually abused by her mother's boyfriend. When the child disclosed the abuse, her mother took the boyfriend's side. Not only did the mother choose not to support the child, she went so far as to scheme with the boyfriend and family members to try to get the child to recant her allegations. Worse yet, she schemed with the child's grandmother—with whom the child was supposed to be staying to protect her from the boyfriend—to circumvent safety plans and allowed the child to stay at the mother's house, where the child was again sexually assaulted by the boyfriend. On the heels of being pressured to recant her

allegations and being sexually abused again, the child became depressed and suicidal. Even after seeing this negative effect on her daughter, coupled with the boyfriend being convicted of doing what the child said he did, the mother remained resolute that she had done nothing wrong. When asked whether she regretted any of the decisions she'd made or things she'd said during the five-year period the juvenile cases had been pending, she said she did not. She also expressed doubt as to whether the sexual abuse occurred.

The mother's inability or unwillingness to protect the child from a known, serious risk is one of the circumstances that resulted in the CINA adjudication. The fact that the mother still has no discernible amount of regret, remorse, or even understanding of where she went wrong leaves us with little to no doubt that those unsafe circumstances still exist. Therefore, we conclude the second element for termination under section 232.116(1)(d) has been established by clear and convincing evidence. This conclusion is supported by our case law. Our court reached the same conclusion when a parent refused to acknowledge abuse in *In re S.R.*, 600 N.W.2d 63 (Iowa Ct. App. 1999). Interpreting the same statutory provision we have here,[2] our court found it "[p]articularly troubling" that the mother "absolute[ly] refus[ed] to acknowledge that either she, [the child's father], or another family member abused [the child]." *S.R.*, 600 N.W.2d at 65. Our opinion also noted that "[t]he requirement that a parent acknowledge and recognize abuse is essential for any meaningful change to occur. Without this acknowledgment,

---

[2] When *S.R.* was decided, the statutory language that is now contained in section 232.116(1)(d) was found in section 232.116(1)(c). *See S.R.*, 600 N.W.2d at 64 n.1 (reciting the statutory language from what was then section 232.116(1)(c), which is identical to the language in current section 232.116(1)(d)).

the services provided were not likely to be effective." *Id.* (citation omitted). Our court concluded the analysis by finding that the statutory grounds for termination under the language now found in section 232.116(1)(d) were established by noting, "[The mother] will not acknowledge the imminent danger of abuse to [the child] under her care. For this reason, she is unable to, and has not, taken any steps to remedy the circumstances which caused the abuse." *Id.* Our supreme court expressed a similar conclusion, in more lyrical fashion, by noting, "It's folly to think the mother will stand sentinel to protect against a foe she doesn't acknowledge exists." *In re D.D.*, 955 N.W.2d 186, 193 (Iowa 2021). The same logic applies here, and we reach the same result. The State proved grounds for termination under section 232.116(1)(d), so the mother's challenge on this issue fails.

The mother raises one additional issue on appeal. She contends the juvenile court erred by not giving her an additional six months to work toward reunification. *See* Iowa Code § 232.117(5) (permitting the court to enter a CINA permanency order under section 232.104 if it chooses not to terminate parental rights); *see also id.* at § 232.104(2)(b) (providing a permanency option of granting a parent an additional six months to work toward reunification under specified circumstances). We decline to address this issue. The mother neither made a request for this relief to the juvenile court nor secured a ruling on any such claim. As a result, she did not preserve error for our review of this issue. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."); *see also A.B.*, 815 N.W.2d at 773 (holding the general rule that issues must be presented to and ruled upon

by the lower court in order to preserve error applies to termination-of-parental-rights proceedings).

Following our de novo review, we affirm the court's ruling terminating the mother's parental rights to the child.

**AFFIRMED.**