**IN THE COURT OF APPEALS OF IOWA**
No. 22-0878
Filed August 31, 2022

**IN THE INTEREST OF S.S. and G.S.,**
**Minor Children,**

**K.S., Mother,**
        **Appellant,**

**W.S., Father,**
        **Appellant.**

_____

Appeal from the Iowa District Court for Hancock County, Karen Kaufman Salic, District Associate Judge.

A father and mother separately appeal the termination of their parental rights to two children. **AFFIRMED ON BOTH APPEALS.**

Theodore J. Hovda, Garner, for appellant mother.

Cameron M. Sprecher, Mason City, for appellant father.

Thomas J. Miller, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

Jane Wright, Forest City, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

A father and mother separately appeal the termination of their parental rights to two children, born in 2018 and 2019. Both parents (I) challenge the evidence supporting the ground for termination cited by the juvenile court; (II) argue termination was not in the children's best interests; (III) assert termination was detrimental due to the closeness of the parent-child bond; and (IV) argue they should have been afforded six additional months to facilitate reunification.

**I.      *Ground for Termination***

The juvenile court terminated parental rights pursuant to several statutory provisions. The parents only challenge the evidence supporting one of the provisions, allowing us to affirm the termination decision on the unchallenged grounds. *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). We elect to address the contested provision, Iowa Code section 232.116(1)(h) (2022), which requires proof of several elements, including proof the children cannot be returned to parental custody.

The parents contend they had "suitable housing" and employment, were without a history of drug use or physical abuse of the children, had "a plan for daycare," and had "a strong support system," permitting immediate reunification. They also contend the department of human services failed to have "psychological evaluations" completed which, in the father's words, "would have been key in understanding . . . their learning capabilities, [and] learning difficulties." The parents' focus on the absence of psychological evaluations implicates the department's obligation to make reasonable reunification efforts. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). "The State must show reasonable efforts as a

part of its ultimate proof the child cannot be safely returned to the care of a parent."
*Id.*

Our de novo review of the record reveals the following facts. The children were one and two when the department learned that they were being locked in their room overnight. The department issued a founded child abuse report. The parents agreed to participate in services to address their parenting deficiencies.

The department began with a module on safe parenting. Because of concerns with the parents' "cognitive functioning levels," the service provider who administered the module "modif[ied]" it and broke "it down so it [was] more easily understandable" before she moved on to the next phase of the module. She also "focused on" one step "for more than one session." According to the department case manager, "it was clear that [the] parents weren't understanding" and, as a result, the department discontinued the training. The department substituted "an intense daily service" in a "further attempt to maintain the children in the home." The service had minimal effect. The case manager testified "the children were again found locked in their room." During one visit after services were initiated, the department discovered the children's bedroom "covered in poop on the walls, bed and floor" and on the children's bodies and faces.

The department requested the children's removal. The juvenile court granted the request and later adjudicated the children in need of assistance. The State ultimately filed a petition to terminate parental rights.

At the termination hearing, the case manager detailed the extensive services afforded the parents and stated, "the only service that was court ordered that the department was not able to offer was psychological evaluations for these

parents." When asked why the evaluations were not provided, she responded, "[t]here was not any places available to be able to do that testing." She said she "called all the way down to Iowa City and around to Des Moines, and there just wasn't any availability to do psychological testing." Responding to a suggestion that evaluations would have been useful, she testified,

> You know, I think the information likely would have said the same that we've all assessed and that's why we modified our teaching styles with the understanding of what their IQ likely is. I don't know that the psychological testing would have necessarily given us any significant insight outside of it may have . . . been an additional assessment . . . on the[] [parents'] ability to parent these kids given what has already gone on.

The case manager pointed out that the "parents were still able to participate in individual counseling, which would have likely been one of the things recommended in a psychological eval[uation]."

There is no question the parents ultimately made progress on hygiene issues and employment. But, as recently as a month before the termination hearing, the case manager testified "the parents still [did not] understand why they were involved" in the proceedings. When asked if she believed a return of the children to parental custody "would pose a significant risk of life to the children," she responded, "I do." We conclude the State satisfied its reasonable-efforts mandate and proved the children could not be returned to parental custody.

## II. Best Interests

Termination must be in the children's best interests. Iowa Code § 232.116(2). The department reported:

> [T]he concerns that were identified at the onset of this case remain at this time. The [d]epartment does not question that these parents love their children however remain very guarded with parents' ability

to learn and demonstrate the necessary skills needed to parent these children on a full-time basis. Interactions between parents and children remain supervised despite the fact that parents have been provided with a barrage of services. Unfortunately the [d]epartment does not anticipate parents making the necessary changes or displaying a consistent understanding of the learned skills necessary to provide for these children's needs now or in the near future. Termination of [p]arental rights would allow the children to achieve permanency through adoption, which is believed to be in the children's best interest.

On our de novo review, we agree with this assessment. We conclude termination was in the children's best interests.

### III.    Bond

A court may grant a permissive exception to termination based on the parent-child bond. *See id.* § 232.116(3)(c); *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). The district court concluded "[a]ny sadness the child[ren] [might] experience because of termination" would not "overcome the likely long-term hardship and neglect" they would "suffer if in the care of" their parents. On our de novo review, we agree.

The parents did not develop a solid bond with the children while they were in their care. After removal, their participation in supervised visits was "sporadic." These failed opportunities to cultivate a close relationship meant that the children looked to others for security. As an example, they saw the case manager only once a month but came to her rather than their parents "to meet their needs." Under these circumstances, the juvenile court appropriately declined to invoke the parental bond exception to termination.

*IV*.    **Additional Time**

The father argues he should have been afforded additional time to reunify because "the [d]epartment did not provide adequate services to the family." The mother argues that, if the court does not overturn the termination order, she should "be given an additional six months to show her ability to parent her children." *See* Iowa Code § 232.104(2)(b). As discussed, the reunification services afforded the parents were more than adequate. As for the viability of continuing those services for six more months, the case manager said it best: "I'd like to be able to say that with some more time, these boys can go home, but, unfortunately, that's not something that has been displayed. Parents are not demonstrating the skills, the stability, the knowledge to be able to parent these boys on a full-time bases." On our de novo review, we determine that an extension of time of six months for reunification services would not eliminate the need for removal of the children from the home.

We affirm the juvenile court's termination of parental rights to these two children.

**AFFIRMED ON BOTH APPEALS.**